BIFFLE v. JACKSON.

Opinion delivered February 21, 1903.

1. JUDGMENT IN VACATION—VALIDITY.—A decree in chancery rendered in vacation, though entered on the judgment record in a blank space left for the purpose, is a nullity. (Page 231.)

2. SUIT TO QUIET TITLE—IMPROVEMENT.—In an action to quiet title, no allowance will be made for labor done and materials furnished by defendants in improving the land where the labor expended upon the improvements was paid for by the use of the land, and the materials were furnished after institution of the suit. (Page 232.)

Appeal from Clay Chancery Court.

EDWARD D. ROBERTSON, Chancellor.

Affirmed.

W. E. Spence and G. B. Oliver, for appellants.

Parol evidence, or evidence dehors the record, was not admissible to show when the judgment was rendered. 33 Ark. 475; 49 Ark. 397; 50 Ark. 338; 11 Ark. 369; 5 Ark. 363; 10 N. E. 191; 12 Rob. 531; 2 Root, 258; Bl. Judg. § 273. Consent may

authorize a judgment in vacation. Bl. Judg. § 179; 5 Enc. Pl. & Pr. 1033; 4 *id.* 345, 346; 19 Am. Dec. 46; 44 Cal. 84; 48 Ark. 156; 7 N. Y. Supp. 281; 23 La. Ann. 483; 32 *id.* 974; 81 Ill. 103; 21 Ia. 133; 37 Ia. 127; cf. 2 Am. & Eng. Enc. Law (2nd Ed.) 539, 540; 28 Ark. 519. The court had no power to set aside the judgment after the lapse of the term at which the original judgment was rendered.

*J. D. Block* and *T. H. Sullivan,* for appellees.

The action of the lower court in finding that the decree was rendered in vacation, being supported by evidence, will not be reviewed. 42 Ark. 246; 49 Ark. 465; 44 Ark. 216. Since this evidence is not before the court here, it can not review same. 58 Ark. 134; 45 Ark. 240; 30 Ark. 479. The court had power to correct its record at any time, so as to make it speak the truth. 57 Miss. 730; 1 Fr. Judg. § 121. The record does not show consent to vacation decree. 99 Ill. 600. The recital to that effect in the decree is no evidence of the truth thereof. Bl. Judg. § 388; 31 N. H. 286. Consent can not validate or authorize vacation decree, in the absence of statutory authority. 4 Enc. Pl. & Pr. 345; Bl. Judg. § 179; 9 Cal. 173; 34 *id.* 329; 40 *id.* 183; Fr. Judg. § 121; 4 Col. 109; 58 Ga. 114; 11 W. Va. 673. *Bona fides* in claim of ownership is necessary to a claim of betterments. 46 Ark. 333; 48 *id.* 183; 47 *id.* 528.

BUNN, C. J. This is a bill in equity by B. B. Biffle and E. D. Hicks, in the Eastern district of the Clay county circuit court, filed November 14, 1894, wherein the plaintiffs allege that "they are the owners in fee in the following lands, situated in the Eastern district of Clay county and state of Arkansas, to-wit: The north half of the northeast quarter of section fourteen (14) in township twenty (20) north, range eight (8) east, containing 80 acres, more or less." Plaintiffs further state that said land is wild and unoccupied, and that they claim title to said land under the following, to-wit: That on the 29th day of August, 1859, the United States government, by its patent of that date executed and delivered, conveyed said land to W. C. Rayburn; that on the —— day of ————, 189—, W. C. Rayburn died intestate, seized of said land, leaving surviving him the following named heirs, to-wit: M. M. Rayburn, Nola Donaldson, Maggie

Timberman, Josie E. Panky, Alma F. Stokes and Roxie E. Webb; that on the 22d day of September, 1894, the above-named heirs of W. C. Rayburn, by their deed duly executed and delivered, conveyed said land to these plaintiffs, which deed was filed for record on the 22d day of October, 1894, as will be seen by reference to a copy thereof and certificates thereto attached, herewith filed as exhibit "A" and made part of this complaint. Plaintiffs further allege that on the —— day of ————, 18——, Luke Thomas, by his deed of that date, sold and conveyed said land to Fannie C. Jackson, one of the defendants; that said Fannie C. Jackson did not acquire any title to said land by virtue of said purchase, for the reason that said Luke Thomas had no title to the land at the time of the conveyance, nor did he afterwards acquire any; that, under and by virtue of the act of the legislature of 188—, Robert Liddell, as clerk of Clay county, deeded said land to J. J. Allen on the —— day of ————, 1885, for the taxes due thereon for the year 1883, and that said Mary Nubauer, one of the defendants, claims title to said land by virtue of the mesne conveyance from said Allen to her; that the sale under which the said Robert Liddell, as clerk as aforesaid, deeded said land to J. J. Allen, and under which the defendant, Mary Nubauer, claims title to said land, is absolutely void, and has been so declared by the supreme court, for the reason of the unequal levy of taxes in Clay county for that year; that all of defendant's deed to said lands are clouds upon the plaintiff's title. Wherefore plaintiffs pray that all of defendant's deeds to said land be cancelled, set aside and held for naught, that plaintiff's title be quieted, and that the title to said real estate be awarded to plaintiffs, and for costs and all other proper relief."

To this complaint, the defendant, Fannie C. Jackson, filed her separate answer and cross complaint in substance as follows, to-wit:

The defendant, Fannie C. Jackson, for her separate answer to the complaint of the plaintiffs and her cross complaint, denies that plaintiffs are the owners in fee of the north half of the northeast quarter of said section 14; denies that said land is wild and unoccupied; admits that on the 28th day of August, 1859, the United States, by patent, duly conveyed said lands to W. C. Rayburn; admits that the said W. C. Rayburn subsequently died intestate, leaving him surviving as his heirs at law the children

named in plaintiffs' complaint; and admits that on the 22d day of September, 1894, these children and heirs at law of W. C. Rayburn conveyed this land to plaintiffs herein; but denies that they, the plaintiffs, acquired any title by such conveyance for reason hereinafter to be given. Defendant, further answering, states that prior to his death the said W. C. Rayburn conveyed said lands to Luke Thomas, which deed of conveyance was in due form, regularly executed, acknowledged and delivered and filed for record at Gainesville in the recorder's office of Greene county, which county at that time included the said Eastern district of Clay county, and that said deed and the record thereof were destroyed by fire in the burning of the court house of Greene county on the —— day of ————, 18——, and for that reason can not now be produced; that defendant claims title by deed from said Luke Thomas; that, before purchasing said lands from Thomas, her husband, G. M. Jackson, acting for her, was informed by said W. C. Rayburn, then living, that he had conveyed the same to said Thomas, and that he had a good title thereto, and, upon the faith of such representations the said George M. Jackson, acting for her, purchased said land from said Thomas. Defendant, further answering, states that in purchasing said lands she also purchased a large body of other lands adjacent thereto and in the same body, all included in the same deed; and went immediately into possession of the same, and caused to be erected thereon a large saw mill, sheds, fences, ox-lot, stables and houses, and cleared and fenced and cultivated a part of said land; that she had been in possession thereof for more than seven years at the time of the filing of plaintiff's complaint; that the possession was open and notorious; that she exercised ownership also by cutting and causing to be cut saw logs and other timber on said lands, and removing the same therefrom. Defendant admits that the purchase of her co-defendant, Mary Nubauer, was void, for the reason stated in plaintiff's complaint. Wherefore she prays that the complaint be dismissed for want of equity; that plaintiffs' deed from the children and heirs of W. C. Rayburn be declared null and void, and set aside and cancelled; that the title to said lands be declared full and complete, and her title be quieted, and for other relief.

The January term, 1896, of said circuit court for the Eastern district of Clay county began on the 20th of January, 1896, and

on the 12th day of said term, the same being the 31st day of January, 1896, the following order appears of record among the proceedings of said court, to-wit: "On this day, this cause coming on to be heard, come the parties thereto by their attorneys respectively, and by consent this cause is submitted to the court, and it is agreed that the same be set for argument for Tuesday night of the third week of Craighead county circuit court for the Jonesboro district, and it is further agreed that further proof can be taken by both parties hereto, and that the same can be submitted to the court on or before the day set for argument in said cause."

The court appears to have adjourned on that day until court in course. At all events, no further business was transacted for the term, but a space on the minute book seems to have been reserved for the entry of any decree that might be thereafter rendered in the cause. Depositions were taken during the month of March, and the judge of the circuit court considered the cause in August following, and formulated his decree, which was in favor of the contention of plaintiffs, and transmitted the same to the clerk, who was also one of the plaintiffs, and the decree was entered in the space on the record book so reserved as aforesaid, without further entry as to the date of the entry thereof. This decree concluded with the following statement of the judge:

"This cause having been submitted at the regular January term, 1896, of the Clay circuit court for the Eastern district, and taken under advisement by the court; it is agreed that this decree be rendered now for then, to which finding and decree of the court the defendant at the time excepted, and prayed an appeal to the supreme court, which is granted.

[Signed]                                "F. G. TAYLOR, Judge."

No further findings were had in the case, and no further steps were taken in it until the 28th day of September, 1897, when the children and only heirs at law of Fannie C. Jackson, the defendant, who appears to have died intestate on the 25th day of May, 1896, during the pendency of the suit, and before the decree was actually rendered, filed their petition to have said decree set aside and held for naught, on the ground that the same was rendered in vacation, and when the judge rendering it was holding court in another county in the circuit. The court held that said decree was rendered in vacation, and was therefore void, and

therefore granted the petition, and revived the action with said heirs at law as defendants.

This petition, as a part of the final decree, appears to have been formally heard again on proper notice and in amended form by the chancellor, after the organization of the chancery district, at the April term, 1898. Said final decree is in form as follows, to-wit:

"1. That Fannie C. Jackson departed this life May 28, 1896, intestate, and that said Josiah A. Jackson, George M .Jackson, Jr., Ama Jackson, and Maud S. Jackson, are the children and only heirs of the said Fannie C. Jackson, Sr., her husband.

"2. That Fannie C. Jackson was the owner of the north half of the northeast quarter, section fourteen (14), township twenty (20) north, range eight (8) east, and that her children above named are now the owners thereof by inheritance, and are entitled to have their title to said land quieted as against said B. B. Biffle and E. D. Hicks. It is further considered, ordered, adjudged and decreed by the court that the decree made and entered in vacation, and the original decree confirming the tax title in cause No. 3, be set aside and vacated, and that the said bills be dismissed for want of equity. It is further ordered and decreed by the court that the titles of the said Josiah A. Jackson, G. M. Jackson, Ama Jackson and Maud S. Jackson to the north half of the northeast quarter, section fourteen (14), township twenty (20) north, range eight (8) east, be quieted against B. B. Biffle and E. D. Hicks, and that the tax title and the title deed of the heirs of W. C. Rayburn to said B. B. Biffle and E. D. Hicks be cancelled and set aside as a cloud upon the title of the said Josiah A. Jackson, George M. Jackson, Jr., Ama Jackson and Maud S. Jackson, and that B. B. Biffle and E. D. Hicks pay all costs, for which execution may issue."

From this decree B. B. Biffle and E. D. Hicks prayed an appeal to the supreme court, which was granted. And on the same day filed a written motion to modify the decree to the effect that they be allowed the value of the improvements made on the land, setting out the improvements.

That the original decree was rendered in vacation is abundantly established by the testimony both of witnesses and the record, since it is shown that the depositions upon which the decree was based were taken after the adjournment of the court at which the decree purports to have been rendered.

The chancellor also had ample evidence to find that W. C. Rayburn sold and conveyed said land to Lucas Thomas, that the deed was put on record, and that the same, as well as the record thereof, had been destroyed by fire, and that Thomas afterwards conveyed land to Mrs. Fannie C. Jackson, his deed to her being exhibited, and that this title was superior to that under which the plaintiffs, Biffle and Hicks, claim, since their grantors, the children and heirs of W. C. Rayburn, had nothing to convey since the ancestor had previously conveyed to Thomas; that there was no divestiture of Fannie C. Jackson's title, nor that of her children after her, by reason of any of the alleged tax sales; that the proof fails to show that said Fannie C. Jackson made any conveyance of the land involved to Thomas or any one else after her purchase from him; that the exhibit mortgage from Thomas to her did not include in its description the land in controversy; that upon the whole case the decree of the court in favor of the heirs of Fannie C. Jackson was correct, and is affirmed.

As to the motion to modify the chancellor's decree, it appears that the labor expended upon the improvements was paid for by the use of the lands, and that the lumber that went into the improvements was all that plaintiffs contributed to the making of the same, and that this amounted to about $75, but this was furnished after the institution of the suit, and in fact after the original decree was rendered, to-wit: about the 1st of January, 1897. This claim was properly disallowed.

The decree of the chancellor is in all things affirmed.