BERNARD P. GAVIN

*v.*

SUSANNA CURTIN.

*Opinion filed February 14, 1898.*

1. EQUITY—*equity will not suffer a right to be without remedy.* Equity will take jurisdiction in all cases where a right recognized by municipal law exists, for the protection and maintenance of which courts of law provide no adequate remedy.

2. SAME—*rights for which equity will provide a remedy must be recognized by municipal law.* Those rights for the protection and maintenance of which equity will provide a remedy are not mere abstract moral rights, but rights recognized by existing municipal law.

3. SAME—*jurisdiction of equity to grant relief does not depend upon precedent.* Where a right recognized by municipal law exists without adequate remedy in courts of law, equity will not refuse relief because no precedent can be found where equitable relief was granted under the same state of facts.

4. SAME—*power of equity to order sale of trust estate conditioned against alienation.* A court of equity having jurisdiction of a cause cannot be denied the power to order the sale of real estate which is the subject of a trust, upon the sole ground that the terms of the instrument creating the trust prohibit alienation; but such power should be exercised only when necessary to preserve the estate or the interests of the parties therein.

5. SAME—*when equity may order sale of real estate, and re-investment, to protect rights of owners.* Upon a bill by a life tenant equity may appoint trustees to take the fee in the property, sell the same and re-invest the proceeds for the benefit of the life tenant and the remainder man, where it appears that unless equity interferes the property will be lost to both life tenant and remainder-man.

6. PARTIES—*when decree will be binding upon parties not in being.* Where devised property will be lost to the devisees without the aid of a court of equity, that court, having obtained jurisdiction of all devisees in being, may render a decree which will protect the rights of all the devisees, whether in being or unborn, and such decree will be binding upon devisees subsequently born.

WRIT OF ERROR to the Circuit Court of Cook county; the Hon. THOMAS G. WINDES, Judge, presiding.

EDWARD W. CULLEN, for plaintiff in error.

JOHN W. WALSH, for defendant in error.

Mr. JUSTICE BOGGS delivered the opinion of the court:

John Gavin died testate on the 25th day of April, 1892. He left surviving him three sons, Bernard P. Gavin, (the plaintiff in error,) John F. and James C. Gavin, and a daughter, Susanna Curtin, (the defendant in error,) wife of William D. Curtin. The deceased, at the time of his death, owned two parcels of real estate in the city of Chicago, described as follows: The north-west quarter of the north-west quarter of section 18, township 38, north, range 14, east of the third principal meridian, (except the east 424.37 feet, and also except the park-way and boulevard,) and sub-lots 3 and 4 of lot 4, block 53, original town of Chicago. The parcel first above described contains about twenty acres of land, and is, for sake of convenience, denominated by the parties in the briefs, and will be hereinafter referred to by us, as the "Fifty-fifth street property." The other parcel, for the like reason, is referred to in the briefs as the "Market street property," and will be so called by us.

The will of the deceased is as follows:

"I, John Gavin, of the city of Chicago, in the county of Cook and State of Illinois, being of sound mind and memory, do make, publish and declare this my last will and testament, hereby revoking all former wills by me at any time made.

"*First*—I direct that my funeral expenses and just debts be first paid.

"*Second*—I give and bequeath the following sums to the following persons, and charge my real estate with the payment of the same, viz.: To my friend Eliza Farrell, five hundred dollars ($500); to my friend Patrick Farrell, five hundred dollars ($500); to the directress of St. Joseph's Academy, conducted by the sisters of Charity near Emmettsburg, Frederick county, Maryland, one thousand dollars ($1000), to be expended or invested by her in such manner as she may deem for the best interest of said academy; to the president of St. Mary's College, situated near said Emmettsburg, five hundred dollars ($500), to be expended or invested by him in such manner as he may deem for the best interest of said college.

171—41

"*Third*—To each of my sons, John F. Gavin, Bernard P. Gavin and James C. Gavin, their heirs and assigns forever, I give, devise and bequeath one-fourth of all the rest, residue and remainder of my estate, real, personal and mixed. The remaining one-fourth thereof I give, devise and bequeath unto my daughter, Susanna Curtin, for life, with remainder in fee to the children of said Susanna Curtin; and if any child of said Susanna Curtin shall die in her lifetime leaving issue, any of whom shall be living at the time of her death, such issue shall take equally amongst them the share which their respective parents would have taken if living at her death; and in case said Susanna Curtin die leaving no children and no descendants of any deceased child, then said one-fourth shall vest in my sons, John F. Gavin, Bernard P. Gavin and James C. Gavin, in fee.

"*Fourth*—All the rest, residue and remainder of my estate, real and personal, I devise and bequeath to my three sons, John F. Gavin, Bernard P. Gavin and James C. Gavin, in fee.

"*Fifth*—I hereby appoint James Hoyne and Thomas J. Walsh executors of this my last will and testament.

"In witness whereof, I have hereunto set my hand this 26th day of March, A. D. 1891.              JOHN GAVIN.    [Seal.]"

The defendant in error, on the 9th day of January, 1895, filed in the circuit court of Cook county a bill in chancery, to which she made parties defendant her said three brothers. The bill alleged the execution of the will, the death of the said John Gavin, and that he died seized of the title to the real estate hereinbefore described and left no other kind of property of any kind or character; that the complainant was not at the date of the death of her said father, and has not been since and is not now, possessed of any property whatever, except as devisee under the will; that her said brothers, the defendants in the bill, had paid the legacies and bequests mentioned in the second clause of the will and the costs of administration, amounting in the aggregate to $4000, under an agreement with her that she would reimburse them for her proportionate part thereof; that prior to his death the testator, her father, executed a mortgage upon the Market street property to secure an indebtedness due from him, in the sum of $22,000, bearing interest at the rate of

six per cent per annum, payable annually, and that the same remains unpaid; that said Fifty-fifth street property is vacant acre-property, and has been partitioned by decree of the Superior Court of Cook county, and a part thereof, consisting of 5.151 acres, set off in severalty to the complainant; that it produces not to exceed five dollars per year annual income, and that the annual taxes thereon are about the sum of $250; that said premises are not susceptible of being made income-producing, and will be exposed to danger of being lost to the complainant and the remainder-men by reason of the non-payment of taxes, and will be subject to special assessments soon, in all probability, to be levied for various improvements, for the purpose of paving streets, sidewalks, etc., which, if not paid, will result in the sale of the premises and the loss thereof to all interested therein; that said Market street property is reasonably worth the sum of $100,000; that the improvements thereon consist of an old-fashioned four-story building of little value, and not considered in the said valuation of $100,000; that said improvement is wholly inadequate to secure a fair return upon the value of the property, and that the largest annual income derived from this property has not, since the death of the said testator, exceeded the sum of $2500, and that a larger income cannot be secured or that income maintained without the expenditure of considerable sums of money; that the annual taxes thereon are about the sum of $700 and the annual interest charge on the said mortgage $1320, making a total outlay of $2020, not including insurance, repairs and other incidental current expenses, so that, at most, the income of complainant from said Market street property does not exceed $150 per annum, and that in fact she has received only the sum of $100 per annum since the death of her said father; that the income from the two parcels of property will not discharge the taxes upon the Fifty-fifth street property by the sum of $150 per annum, and in their present condition the prop-

erty imposes an annual burden of that amount upon the complainant, and in addition she is still indebted to her brothers on her obligation to re-pay to them her proportionate part of the amount advanced by them to discharge the legacies provided for by the second clause of the will; that complainant intermarried with said William D. Curtin in 1888, some four years before the death of her father, and has since lived and cohabited with her said husband, is thirty-seven years of age and has never borne a child; that she can only convey a life estate, which, under the circumstances, would not benefit but only impose burdens on the buyer and would be valueless, and that, owing to the fact the remainder in fee is contingent, the fee cannot be conveyed; that she cannot, and in justice and equity ought not, be required to pay the taxes and assessments and preserve the property from loss by sale to pay the same, and that unless a remedy is provided by the courts the fee must inevitably be lost to the remainder-men. The prayer of the bill is, that a trustee be appointed and vested with the title in fee to the two parcels of real estate, to hold to the use of complainant (defendant in error) during her life, and to her children (if any be born to her) and to the descendants of any deceased child, if any there be, in fee, and in default of issue born to her, to her said brothers in fee, and that said trustee be invested with power to sell said premises and invest the proceeds for the benefit of those entitled, etc.

.The defendants to the bill were duly summoned but did not appear, and were defaulted. The cause was referred to the master to take and report the proof, with his conclusions of fact. The evidence was taken by the master, and, together with his conclusions of fact thereon, reported to the court. The master's conclusions fully supported the allegations of the bill, and are amply and abundantly sustained by the proofs. The court approved the report and entered a decree appointing the said John F. and James C. Gavin trustees, and invested them with

the title in fee to the undivided one-fourth of the Market street property and the said 5.151 acres of the Fifty-fifth street property, to hold for the use of the said Susanna Curtin for life, remainder to her child or children and children of any deceased child in fee, and in case she should die without children or descendants of child or children, remainder in fee to the said John F., Bernard P. and James C. Gavin, in fee. The decree also invested the trustees with power, subject to the approval of the court, to sell and dispose of the said premises, or any part thereof, or to exchange the same for some species of income-bearing property and invest the proceeds in safe securities or productive real estate, and to pay the annual income to the said Susanna Curtin, after first paying and discharging all liens by way of taxes, assessments, incumbrances, interest, cost of insurance and necessary repairs, or to mortgage the premises, if necessary to discharge the existing mortgage on the Market street property. The decree further provided the trustees should execute a bond, with securities to be approved by the court, in the sum of $25,000, conditioned for the faithful performance of the trust, and that the trustees should, from time to time, report to the court. This is a writ of error to bring the proceedings into review in this court.

Two questions are presented by this record. The first is, whether it is within the jurisdiction and power of a court of equity to grant the relief asked by the bill and awarded by the decree; and the other is, does the decree bind children who may hereafter be born to the said Susanna Curtin.

The record discloses the defendant in error is possessed of a right, recognized by the general principles of municipal law, to enjoy during her lifetime an estate in the premises involved in the proceeding, and that her children, if any are born to her, will be legally entitled to receive and possess in fee the remainder in said prop-

erty, and that the circumstances are such the life estate and the remainder in fee will be destroyed and lost to all who are or may be interested therein unless jurisdiction to provide a remedy and power to avert such destruction are vested in some judicial tribunal. It is beyond discussion that courts of law are powerless to render relief. It remains to be determined whether a court of equity may assert and exercise the necessary jurisdiction and power. If not, it would seem we have an instance of the existence of a legal right which cannot be protected and maintained because of a lack of an appropriate tribunal having adequate judicial power to render the necessary relief. We think our institutions are not subject to this reproach, but that our court in equity had full jurisdiction and power to meet the emergency.

There are certain general precepts or principles, denominated maxims, which a learned author declares "are in the strictest sense *principia*,"—the beginnings out of which have developed the entire system of truth known as "equity jurisprudence." (1 Pomeroy's Eq. p. 390.) Another author of equal learning says: "There are in equity several of these maxims in which the general principles of chancery jurisdiction, and the methods by which they are applied, are succinctly expressed. The first of these maxims is, that equity will not suffer a right to be without a remedy. The principle expressed by this maxim is, indeed, the foundation of equitable jurisdiction, because, as we have seen, that jurisdiction had its rise in the inability of the common law courts to meet the requirements of justice." Bispham's Principles of Eq.—3d ed.— p. 53.

It is to be observed, the rights, to protect and preserve which these learned authors declare courts of equity will provide a remedy, are not mere abstract moral rights, but rights recognized by the existing municipal law. The right possessed by the defendant in error in this case is one which belongs to the purview of municipal law and

comes within the scope of juridical action, but the power of the courts of law, or their modes of procedure, are inadequate to furnish a complete remedy. It may be that an instance cannot be cited where a court of equity has been called upon to take jurisdiction and render relief in a case in all its aspects precisely the same as the case at bar, but that does not furnish a sufficient reason for declaring the jurisdiction does not exist. The expressions of this court in the case of *Dodge* v. *Cole,* 97 Ill. 338, are here in point. It was there said (p. 364): "The jurisdiction of a court of equity does not depend upon the mere accident whether the court has, in some previous case or at some distant period of time, granted relief under similar circumstances, but rather upon the necessities of mankind and the great principles of natural justice, which are recognized by the courts as a part of the law of the land, and which are applicable alike to all conditions of society, all ages and all people.  *  *  *  Where it is clear the circumstances of the case in hand require an application of those principles, the fact that no precedent can be found in which relief has been granted under a similar state of facts is no reason for refusing it."

We think it may be laid down as an unfailing rule that equity will take jurisdiction in all cases where a right recognized by municipal law exists and courts of law do not provide an adequate remedy for the enforcement, maintenance and protection of that right, hence we think the court had jurisdiction to entertain the bill. Was it lacking in power to award relief?

It is suggested that in the case at bar it was the intention of the testator, to be gathered from the will, that the real estate here involved should not be alienated, but that the estate should be preserved intact and should so descend and vest in the remainder-man, and that in such case a court of equity is without power to break in upon the will and sell the land. There is no express denial of the right of alienation in the will, but it is manifest it was

the expectation of the testator, even if he had not formed
a deliberate intention to that effect, that the property
should be preserved intact and so descend to and vest in
the remainder-man.   But we think it well settled that a
court of equity, if it has jurisdiction in a given cause, can
not be deemed lacking in power to order the sale of real
estate which is the subject of a trust, on the ground,
alone, that the limitations of the instrument creating the
trust expressly deny the power of alienation.   It is true,
the exercise of that power can only be justified by some
exigency which makes the action of the court, in a sense,
indispensable to the preservation of the interests of the
parties in the subject matter of the trust, or, possibly, in
case of some other necessity of the most urgent charac-
ter.   The jurisdiction and power of a court of chancery
in this respect were the subject of discussion in this court
in *Curtiss* v. *Brown*, 29 Ill. 201, *Voris* v. *Sloan*, 68 id. 588, and
*Hale* v. *Hale*, 146 id. 227, and the conclusion reached in each
of such cases is in harmony with the view hereinbefore
expressed, that courts in equity have full power to enter-
tain bills and grant relief in such cases as that at bar.
In the first of these cases it was said (p. 230): "Exigencies
often arise not contemplated by the party creating the
trust, and which, had they been anticipated, would un-
doubtedly have been provided for, where the aid of the
court of chancery must be invoked to grant relief imper-
atively required; and in such cases the court must, as far
as may be, occupy the place of the party creating the
trust, and do with the fund what he would have dictated
had he anticipated the emergency.   *   *·   *   From very
necessity a power must exist somewhere in the commu-
nity to grant relief in such cases of absolute necessity,
and under our system of jurisprudence that power is
vested in the court of chancery."

It is urged that in each of the cases cited the court
took jurisdiction for the reason a trust was involved, and,
having thus obtained jurisdiction, exercised power to sell

the trust property on the ground that, having jurisdiction, power to grant full relief followed. Even if the only source of jurisdiction in the cases arose out of the fact that a trust was involved, still that fact did not operate to invest the court with power, in dealing with the property, other than it would have had had the jurisdiction arisen under any of the other heads of equitable jurisdiction. If we are right in the view that the court had jurisdiction, in the case at bar, to entertain the cause, no reason is perceived why it should be deemed lacking in power to grant the same character of relief as was rightly exercised in the cases cited.

We think the evidence in the case at bar disclosed it was essential to the preservation of the rights and interests of all who are, or who, upon the contingency named in the will, may become, interested in the land, that the power so possessed should be exercised by the court.

The question remaining to be determined is, whether the decree is binding upon any child or children that may be born to the defendant in error.

It is a general rule that all parties having an interest in the subject matter of a proceeding must be made parties to the proceeding and be brought before the court, either as complainants or defendants. In this case all parties in being who have such interest are before the court and bound by the decree. But it is suggested that in the event a child or children be born to the said Susanna Curtin, such child or children will be seized of a remainder in fee, and that the decree will be ineffectual to protect those purchasing under it against the right of such child or children. Such possible child or children of the said Susanna Curtin not being *in esse*, cannot, of course, be made parties to the proceeding, and unless the decree may be made to operate against them if they ever come into existence, the condition presented is that the rights and interests of persons in being are to be sacrificed and lost upon the sole ground it is possible that

others may come into being and become interested in the subject matter of the litigation. The evidence in the case discloses that the estate for life vested in Mrs. Curtin, and the remainder, which is to vest either in her children, if any are born to her, or to her three brothers if she have no children, is to be lost to all who are or may be interested unless the intervention of judicial power shall avail to preserve and protect it. The proceeding is for the purpose of saving and preserving the property rights of all those interested or to become interested therein under the will. In that purpose all the parties before the court are alike interested. The parties *in esse* have the same incentive and interest to accomplish the same purpose as would move and possess the parties not *in esse* if they were in being. The possible persons not *in esse* are therefore represented by the parties before the court, and if they ever come into being will be bound and concluded by the decree.

This court had occasion to consider the doctrine of representation of parties not *in esse* in *Hale* v. *Hale, supra,* where we said (p. 259): "Especially is this doctrine applicable where the persons not before the court are only possible parties not *in esse,* and where the interests of all parties in being require a decree which will completely and finally dispose of the subject matter of the litigation. Such possible parties cannot, as a matter of course, be brought before the court in person, and it would be highly inconvenient and unjust that the rights of all parties in being should be required to await the possible birth of new claimants until the possibility of such birth has become extinct. If persons in being are before the court who have the same interest and are equally certain to bring forward the entire merits of the question, and thus give such interests effective protection, the dictates both of convenience and justice require that there should be a complete decree." And also cited with approval the following observations of the court in *Bofil* v. *Fisher,* 3

Rich. Eq. 1, viz.: "But the question is, whether the court has the power, by its decrees, to alienate the contingent titles of unborn remainder-men, who, from the nature of things, cannot be made parties or be represented in the proceedings before the court, or to alienate the contingent titles of persons who, though *in esse*, are resident in other States or in foreign lands,—whose residences and even whose names are unknown. To say that the court could not, under circumstances like these, convey away the fee, would be to assert a doctrine that would render conditional limitations and contingent remainders an intolerable evil to a growing and prosperous community. Thus to shackle estates, without the power of relief unless every person having a contingent and possible interest could be brought before the court, would be to sacrifice the rights and interest of the present generation to those of posterity, and of citizens to aliens. If the whole property of the country were thus situated, it is obvious that all improvement and advance would be completely checked." See, also, 17 Am. & Eng. Ency. of Law, p. 728, and many authorities cited in note.

The bill in this case sets forth correctly the rights of any child or children which may be born to the said defendant in error, and the prayer is so framed as to call upon the court to protect such right, and the decree declares and establishes their rights and makes full provision for the protection of the interests of such possible after-born children. The following quotation from the opinion of the court in *Hale* v. *Hale, supra,* (p. 260,) is here significantly appropriate: "The rights of those *in esse* and those not *in esse* are protected by the decree in precisely the same way and to the same extent. In case of neither are those rights defeated or denied, but they are expressly affirmed, the. effect of the decree being to authorize the conversion of the lands in this State into personal property, and when such conversion is made it merely transfers the equitable rights of all these residu-

ary beneficiaries from the land to the fund which will be created by their sale. In all this the grandchildren not *in esse* have been fully represented, and their rights have been fully defended and protected by those in being. The decree, therefore, must be held to be valid as a conclusive disposition of the rights of all the beneficiaries,—as well those not *in esse* as those who were made defendants to the bill by name."

The decree is affirmed.                    *Decree affirmed.*