## BEDFORD *v.* BEDFORD.

### Opinion delivered December 2, 1912.

1. REMAINDERS—EQUITY—POWER TO SELL CONTINGENT REMAINDERS.— Equity has jurisdiction to order sale of contingent remainders for reinvestment; and this is true though one of the remaindermen is an infant. (Page 590.)

2. SAME—SALE FOR REINVESTMENT.—Where the chancery court orders that lands bequeathed to the testator's widow with remainder over to the other heirs be sold for reinvestment, it should follow up the reinvestment and see to it that the testator's will is carried out. (Page 593.)

3. SAME—POWER TO ORDER PRIVATE SALE.—The jurisdiction of equity to order the sale of contingent remainders does not arise from any statute on the subject, and is not restricted by any of the statutes regulating other judicial sales, and therefore the sale may be a private one. (Page 593.)

Appeal from Lee Chancery Court; *Edward D. Robertson,* Chancellor; affirmed.

*F. N. Burke,* for appellant.

The court was without jurisdiction to render the decree, and it is not binding on appellant or other parties owning an interest. The title to the fee is *"in nubibus; in gremio legis,"* etc., according to the ancient authorities, but, according to the modern authorities, it is still in the grantor, or in abeyance. 44 Ark. 458.

*C. E. Daggett,* for appellee.

The court had jurisdiction. Equity will furnish a remedy for eve y wrong. Pom. Eq. (3 ed.) § 423; 36 Ark. 120; 44 *Id.* 458; 95 *Id.* 18; 16 Cyc. 653 (2); 61 S. W. 1025; 32 N. E. 704.

McCulloch, C. J. John Harper, a citizen of the State of Kentucky, died leaving a last will and testament, whereby he devised certain lands in that State to the children of his nephew, Adam Harper, "for their life only and at their respective deaths to go to such of their children or grandchildren, respectively, as by last will and testament they may direct; and, in case any fail so to direct, to be divided equally between their children or their descendants; the children of any that are dead to take the place of their parents." Mrs. Susan Bedford was one of the children of Adam Harper, and the lands thus devised to her were sold for reinvestment under an order of a court of proper jurisdiction, and the proceeds were reinvested in the purchase of a plantation in Lee County, Arkansas, known as the "Pillow Mound" place. The deed from the vendor followed literally the terms of the John Harper will, and the lands were thereby conveyed to Mrs. Bedford "for and during the term of her natural life, * * * and at her death to go to such of her children or grandchildren as by last will and testament she may direct, and, in case she fails so to direct, to be divided equally between her children or their descendants, the children of any that are dead to take the place of their parents, all as provided by and in accordance with the terms, conditions and limitations of the will of the late John Harper of record in the office of the clerk of the county court of the county of Woodfore, State of Kentucky."

Mrs. Bedford is still living, and has six children, all of whom are adults except the youngest daughter, Margaret O. Bedford, who is a minor under the age of fourteen years. Mrs. Bedford and her five adult children instituted this action in the chancery court of Lee County against Margaret O. Bedford, praying for confirmation of a sale of said land which they proposed to make, and had agreed to make, to one Thompson, for the purpose of reinvesting the proceeds in the purchase of other lands. They show, by allegations in their complaint and by proof, that only a small portion of said lands is in cultivation and yields but little income; that the farm is badly out of repair, and that they have no means with which to make repairs; that the lands suffer great injury from year to year on account of overflow of the Mississippi River, and that no protection is derived from the levees; that said lands do not constitute a fit place for the residence of the life-tenant and her said children; that they have negotiated a sale of the lands to Thompson for the sum of $10,000, which is a full and adequate price, and that it is to the interest of all parties that the sale be made and the proceeds reinvested in other lands. The court appointed a guardian *ad litem* for the infant defendant, and proceeded to a hearing of the cause. A final decree was rendered, approving the sale to Thompson on the terms mentioned, and ordering a deed to be executed by the court's commissioner upon payment of the agreed price. The sum was ordered to be paid to the clerk of the court, subject to the further orders of the court. An appeal to this court has been prosecuted by the guardian *ad litem* of the infant defendant.

There is a statute in the State of Kentucky authorizing the proceedings under which the Kentucky lands were sold for reinvestment. Section 491, Kentucky Code of Practice. Pursuant to the decree of the Kentucky court, the property there was sold and the proceeds subsequently invested in lands in this State, the conveyance from the vendor vesting the title in the same way as originally prescribed by the last will and testament by which the property was devised.

There is no statute in this State, such as the Kentucky statute, either directly or indirectly authorizing chancery courts to sell lands for reinvestment. In order to find such

authority, we must look to the general powers of chancery courts.

It will be readily seen, from a consideration of the language of the will of John Harper, and the conveyance of this property which followed closely its terms, that a life estate was conveyed to Mrs. Bedford, with contingent remainder over to such of her children as she should nominate or specify by her last will and testament. This evidently refers to such children of Mrs. Bedford, or their descendants, as shall survive at the time of her death, and a limited power of appointment is given to Mrs. Bedford to determine which of the class shall take the remainder. There is, therefore, a double contingency attached to the remainder, as to whether any of the class shall survive at the death of Mrs. Bedford, and also which of them will take under the power of appointment if it should be exercised by her. All of the members of the class who may possibly take are adults save one, the defendant Margaret O. Bedford, and she is an infant.

This court held, in *Watson* v. *Henderson,* 98 Ark. 63, that courts of equity have no jurisdiction to order the sale of a minor's lands for reinvestment, the exclusive jurisdiction over the estates of minors being vested by the Constitution in probate courts.

The fact, however, that one of the class of contingent remaindermen is an infant does not deprive the chancery court of jurisdiction, if jurisdiction is otherwise conferred. The fact that the probate court has exclusive jurisdiction over the estates of infants does not deprive the chancery courts of jurisdiction to sell parts of their estates, for instance, for the purposes of partition, or for the foreclosure of liens, or in other cases where, upon other grounds, jurisdiction is conferred upon chancery courts. The question in this case is not whether the jurisdiction is exclusively vested in some other court, but whether there is any authority to sell lands for reinvestment where there are different interests or estates, including contingent remainders. In many States there are statutes similar to the one in Kentucky referred to above, and we find numerous decisions in those States bearing upon the construction of such statutes. But, as before stated, we have no statute to guide us in this State, and there are few decisions to be found in States where there is no statute on the subject.

The case of *Gavin* v. *Curtin,* 171 Ill. 640, is directly in point. There the will of the testator devised certain property to his daughter for life, with remainder in fee to the children of the daughter surviving at the time of the latter's death and to certain of the testator's sons in the event that no children of the daughter survived. Suit was instituted in a court of equity, similar to this action, alleging the necessity for a sale for reinvestment in order to preserve the rights of all the parties in interest, and the court said:

"It remains to be determined whether a court of equity may assert and exercise the necessary jurisdiction and power. If not, it would seem we have an instance of the existence of a legal right which can not be protected and maintained because of a lack of an appropriate tribunal having adequate judicial power to render the necessary relief. * * * The right possessed by the defendant in error in this case is one which belongs to the purview of municipal law and comes within the scope of juridical action, but the power of the courts of law, or their modes of procedure, are inadequate to furnish a complete remedy. It may be that an instance can not be cited where a court of equity has been called upon to take jurisdiction and render relief in a case in all its aspects precisely the same as the case at bar, but that does not furnish a sufficient reason for declaring the jurisdiction does not exist."

The relief prayed for was granted in all the cases, including the ones based upon statutes authorizing the sale of contingent interests for investment. It has been held that, where there is created a class of contingent remaindermen, some not in being at the time, the suit may be maintained, and those in being sufficiently represent the whole class. *Ridley* v. *Halliday,* 106 Tenn. 607, 61 S. W. 1025; *Faulkner* v. *Davis,* (Va.) 18 Grattan 651; *Gavin* v. *Curtin, supra; Kent* v. *Church of St. Michael,* 32 N. E. 704, 136 N. Y. 10.

This is treated as a doctrine of necessity, for otherwise the jurisdiction of the court would be entirely defeated, because of the fact that there might arise other parties not then in being. The theory upon which the rule rests is, as stated by the Illinois court, that "the possible persons not *in esse* are therefore represented by the parties before the court, and, if

they ever come into being, will be bound and concluded by the decree."

In the recent case of *Watson* v. *Wolff-Goldman Realty Co.*, 95 Ark. 18, 128 S. W. 581, we announced a doctrine which is not without considerable force in its application to this case. In that case there was a life estate with contingent remainder over, and one of the questions involved was, whether the contingent remainderman had a remedy to prevent waste and to recover for waste already committed. The court laid down the rule that there could be no recovery by the remainderman at law, and, *a fortiori*, no remedy to recover damages for waste already committed; but that a different rule prevailed in equity. The court said:

"It is well settled that the rights of a remainderman, whether vested or contingent, are more extensive in equity than at law; and it is equally well settled that he may obtain relief in equity by injunction to prevent the life tenant of his grantee from committing waste. * * * The most serious question in the case is whether a contingent remainderman may seek relief in equity for waste already committed. The courts of this country have held that a contingent remainderman can not maintain an action at law to recover damages for waste already committed. For a collection of the principal cases on the subject, see 30 Am. & Eng. Enc. Law (2 ed.) p. 1. The reason a contingent remainderman has no standing in a court of law is that it can not be known in advance of the happening of the contingency whether he would suffer damage or loss by the waste; and, if the estate never became vested in him, he would be paid for that which he had not lost. On the other hand, it is a rule of universal application that a contingent remainderman may obtain relief in equity by injunction to prevent waste, and this remedy is. given him on the theory that he is entitled to prevent the loss or destruction of that which may become his at the termination of the life estate. * * * Two of the cardinal principles of chancery jurisprudence are, that equity will not suffer a wrong to be without a remedy, and equity looks to the substance rather than the form. * * * For these reasons it seems to us that the plaintiffs are entitled to equitable relief. They should not be entitled to it now by way of indemnity; but we are of the

opinion that it is in accord with the principles of equity for the chancellor in cases like this to take an account of the amount of the damage suffered and impound the same and invest the proceeds for the benefit of the one to whom the estate tail would first pass according to the course of the common law by virtue of the deed in question, in which interest the plaintiffs have an expectancy."

We are of the opinion that the doctrine thus announced is correct, and that the chancery court had jurisdiction to order sale of the property for reinvestment.

It is the duty of the chancery court, not only to safeguard the sale itself, but to follow up the reinvestment of the proceeds so as to see to it that the will of the original testator is carried out. This seems to have been done by the court in the present instance.

Another question arises as to the power of the court and the propriety of its action in approving a private sale, instead of ordering a sale to be publicly made by a commissioner. There is no statute expressly requiring chancery sales to be made publicly. It seems, however, to be the policy here for judicial sales to be made at public outcry, and that is manifested by all the statutes which authorize and attempt to regulate involuntary sales. This does not, however, exclude the power of the chancery court to order a private sale where the same does not fall within the terms of any statute, and we are of the opinion that such power exists. *Cox* v. *Price*, 22 S. E. 512, 2 Va. Dec. 170; *Williamson* v. *Berry*, 8 Howard (U. S.) 495.

The jurisdiction of the chancery court to order the sale does not arise from any statute on that subject, and is therefore not restricted by any of the statutes regulating other judicial sales.

Private sales under judicial decrees are not to be encouraged, and the courts should proceed very cautiously in taking that course. In the present instance, however, as we conclude that the chancery court is not entirely without power and jurisdiction to order the sale made in that manner, no error was committed, for the court seems to have inquired carefully into the propriety of approving the sale already negotiated by the adult parties in interest. The evidence

taken in the case shows conclusively that the sale negotiated is a highly advantageous one, and the court was warranted in concluding that the terms were better than might be secured at a public sale. Therefore, we do not find that any error was committed in that respect, and the decree as a whole will be affirmed.

SMITH, J., dissents as to the power of the court to order or approve a private sale.