WING v. WING.

4-8437                                    208 S. W. 2d 776

Opinion delivered February 23, 1948.

*James Robertson,* for appellant.

*Houston, Houston & Holding* and *J. L. Shaver,* for appellee.

GRIFFIN SMITH, Chief Justice. The primary question is whether Chancery Court had power to direct sale of real property for reinvestment while there was possibility that remaindermen not in being might take.

When D. J. Burnham executed his will in 1924 Martha Overturf, a daughter, was made principal devisee and legatee. Direction was that all property, both real and personal, (subject to certain bequests not here involved) should go to Martha for life, and then to the heirs of her body; ". . . but if she shall die without issue living at her death, then I give such remainder to my nephews

and nieces in equal shares per capita, their heirs and assigns''.

Martha Overturf became the wife of David G. Wing and appears here as Martha B. Wing. The first-named appellant, Martha Wing, is Martha B. Wing's daughter. The family resides in Ohio at Mechanicsburg, as did the testator. Property dealt with by the Chancellor is 1,500 acres of rice land near Hickory Ridge, in Cross County.

Mrs. Wing's complaint discloses that she has three children—a daughter and two sons. The sons are minors. The testator's nieces and nephews are adults. Mrs. Wing named her own children and her father's nieces and nephews as defendants. She asserted that as life tenant she was not in a position to devote the necessary attention to rice culture, nor did she have sufficient knowledge of farming to justify further investments and expenditures for maintaining the lands as rice plantations. It was also alleged that current prices had probably reached a market peak. James Robertson was appointed guardian *ad litem* for the minors.

The chancellor found that it would be for the best interest of all concerned, including contingent remaindermen not in being, that the lands be converted. Mrs. Wing's age is not given, but her life expectancy is mentioned in one of the briefs as ''thirty or thirty-five years''.

The decree, from which the guardian *ad litem* has appealed, found the property to be worth $65,065. A Commissioner was appointed to give notice for twenty days and sell to the highest bidder on a credit of six months, with appropriate security. However, at any time before such public sale, the property may be disposed of privately at its reasonable market value—not less than $65,065.[1] It was directed that proceeds from sale be applied in payment of expenses, including a commission of not more than five percent if the Commissioner should find it necessary to employ an agent, ''and

---

[1] The 1,500-acre tract is operated as two farms, one valued at $43,620, the other at $21,445.

such agent makes or causes to be made a cash sale of said property as authorized herein''.

After paying attorney fees, court costs, etc., the remainder is to be invested and reinvested in U. S. government bonds, and the income and principal ''from time to time [distributed] as may be ordered by this Court.''[2]

The decree, in its essential features, is patterned from the rule established in *Bedford* v. *Bedford*, 105 Ark. 587, 152 S. W. 129. The opinion was written by Chief Justice McCulloch, who very clearly committed the Court to the rule followed in certain other states, ''. . . Where there is created a class of contingent remaindermen, some not in being at.the time, suit [for sale and reinvestment] may be maintained, and those in being sufficiently represent the whole class. This is treated as a doctrine of necessity; for otherwise the jurisdiction of the court would be entirely defeated, because of the fact that there might arise other parties not then in being''. Further emphasizing, Judge McCulloch said: ''The theory upon which [the so-called rule of necessity] rests is [as stated in *Gavin* v. *Curtain*, 171 Ill. 640, 49 N. E. 523, 40 L. R. A. 776] that 'the possible persons not *in esse* are therefore represented by the parties before the court, and, if they ever come into being, will be bound and concluded by the decree' ''.[3] See, also, *Hardy* v. *Hilton*, 211 Ark. 991, 204 S. W. 2d 163.

The *Bedford* opinion stresses the Court's duty to. ''follow up'' reinvestments, to the end that the testator's intentions be respected. In the case at bar the decree designates National Bank of Eastern Arkansas (at Forrest City) as trustee.[4] However, inherent powers of Chancery permit substitution. We think the decree should

---

[2] A further provision is that '' . . . such net proceeds . . . are hereby impressed with a trust in favor of each and all of the parties *in esse* and unborn [as their rights appear] and shall [so] remain, . . . as the right, title, and interest of said parties are created in said real estate by the will of D. J. Burnham.''

[3] For statements of the rule see 33 American Jurisprudence, p. 743, § 265; 31 Corpus Juris Secundum, p. 104, § 89 (b).

[4] We shall assume that the Chancellor, in designating National Bank of Eastern Arkansas as trustee,.ascertained that the Bank had procured the special permit authorized by subdivision (k) of § 248, Title 12, U. S. C. A.

affirmatively express what was intended and may be implied: that is, the trustee should be required to make periodical reports to the Court, (at least annually) showing essential facts relating to the trust; and in the event another is substituted for the Bank the securities should be protected by a sufficient fidelity bond.

That part of the decree permitting the trustee to distribute the income and principal "from time to time as may be ordered by the Court" should be modified by striking the word "principal", thus denying distribution of the *corpus* while there are contingencies under which remaindermen might take. With this modification and the requirement for reports by the trustee and bond in the event of substitution, the decree is affirmed.