WIGAL *v.* HENSLEY.

4-8843                                                          216 S. W. 2d 792

Opinion delivered January 17, 1949.

*Danaher & Danaher,* for appellant.

*Coy M. Nixon, Rowell, Rowell & Dickey, Horace Chamberlin* and *McMillan & McMillan,* for appellee.

MINOR W. MILLWEE, Justice.   By terms of the will of William B. Hensley, deceased, probated in 1891, the testator devised his real estate to his wife, Nora D. Hensley, for life, subject to the payment of certain annuities which have since been waived or settled, with vested remainder of one-half to appellant, Willie May Wigal, testator's only child by a former marriage, and the other half in eight equal shares to the heirs of a deceased brother and to seven sisters, and their heirs.

M. A. Hardin and wife subsequently acquired by purchase the one-half remainder interest of appellant, Willie May Wigal, but the latter by will inherited the 1/16 interest of a deceased unmarried sister of the testator.   The life tenant, Nora D. Hensley, and the Hardins instituted this suit in chancery court seeking confirmation of a sale of the standing timber of a specified size on certain lands of the estate which they negotiated with intervener, Sturgis Manufacturing Company. Appellant, Willie May Wigal, and some 40 other nonresidents who were alleged to be the heirs of the deceased brother and sisters of the testator, together with their unknown heirs, if any, were made party defendants.   Service on the nonresident heirs, known and unknown, was had by publication of a warning order and the appointment and report of an attorney *ad litem* and guardian *ad litem.*

Appellant filed an answer admitting the allegations of the complaint as to her interest in the lands and that it would be to the best interest of all parties that the proposed sale be made to prevent waste, but denied that the court had jurisdiction to order such sale.

Henry F. Sammons and Minnie Sammons filed a separate answer claiming a 1/16 and 1/48 remainder interest, respectively, under the designation of "unknown heirs" and as heirs of two of the deceased sisters of the testator named in the will. It was conceded by plaintiffs that the interests of these defendants were correctly established and the latter joined in requesting confirmation of the timber sale agreement. The proposed purchaser, Sturgis Manufacturing Company, intervened alleging its ability and willingness to perform the sale agreement and requesting confirmation.

The complaint alleges and the undisputed proof shows that the timber involved should be cut and removed to prevent waste and to protect the interest of both the life tenant and remaindermen. The testimony of an expert forester who cruised the timber is that the pine timber had fully matured, would not advance further in height or diameter and should be removed in order to permit a new crop to mature; that 90 per cent of the hardwood timber had matured and was rapidly deteriorating in merchantableness because of damage by moisture and bugs; that all the timber was subject to the hazards of fire and windstorm; and that it was following the practice of good forestry husbandry to cut and remove the timber as provided in the sale agreement. It is further undisputed that the proposed purchase price is the highest obtainable on the market and that there was a slight decrease in market value between the date of the sale agreement and the date of trial.

A final decree was entered confirming the sale as provided in the sale agreement and as previously ordered by the court. The clerk was appointed commissioner and required to give bond for a proper accounting of the sale proceeds as directed by the court. After the payment of costs of the sale, the clerk was first directed to pay to Nora D. Hensley the present value of her life estate in the net proceeds of the sale, and next to the remaindermen whose interests were determined by the decree, their respective shares of said sale proceeds. The clerk was further directed to purchase U. S. savings

bonds with that *pro rata* part of the sale proceeds to be distributed to those remaindermen whose interests had not been properly established with the further direction that said interests be paid over as such interests were established by court order. The court retained jurisdiction of the parties and subject matter.

The only contention of appellant in the trial court, and now urged for reversal, is that the court was without jurisdiction to order the sale. In *Bedford* v. *Bedford,* 105 Ark. 587, 152 S. W. 129, we held that chancery court had authority under its general powers to order a private sale of contingent remainders for reinvestment in other lands even though one of the remaindermen was an infant. The same conclusion was reached in the recent case of *Wing* v. *Wing,* 212 Ark. 960, 208 S. W. 2d 776, where proceeds of the sale were reinvested in U. S. government bonds and the *corpus* properly preserved for the benefit of contingent remaindermen. The Bedford case approved the doctrine announced in the case of *Watson* v. *Wolff-Goldman Realty Co.,* 95 Ark. 18, 128 S. W. 581, Ann. Cas. 1912A, 540, which held that the rights of remaindermen, whether vested or contingent, were more extensive in equity than at law; and that contingent remaindermen had a remedy in equity to prevent waste and to recover for waste already committed.

If contingent remaindermen are entitled to such remedy, there would appear to be less objection to the granting of such equitable relief in the case of vested remaindermen where a majority in interest join with the life tenant in order to prevent waste and preserve the inheritance of all parties. While vested remaindermen might join with the life tenant in the sale of the timber without resorting to court action, it appears that the holders of a minority remainder interest are nonresidents, some of whom are unknown.

In these circumstances we conclude that the chancery court had the power and authority to make the order of sale to prevent waste. However, that part of the decree which provides for immediate distribution of the sale proceeds is modified and such distribution should be

withheld as provided in 3 Ark. Stats., § 29-406 (§ 8219, Pope's Digest), unless plaintiffs below elect to execute the bond required by 3 Ark. Stats., § 29-403 (§ 8217, Pope's Digest). With this modification the decree is affirmed.