196 So.2d 698

Doyle R. YOUNG, as Guardian Ad Litem,

v.

James E. RICE, Executor et al.

8 Div. 251.

Supreme Court of Alabama.

March 16, 1967.

582

Doyle R. Young, Florence, for appellant.

Mitchell, Poellnitz, Cox, Robison & Mc-Burney, Florence, for appellees.

MERRILL, Justice.

The questions presented here are (1) whether an equity court in Alabama has the power and authority to order a judicial sale of lands for reinvestment, under the supervision of the court, of the entire fee or title of the real property when there may be contingent interests in unborn contingent remaindermen, and (2) whether the equity court may conclude by judicial decree the property rights of the unborn contingent remaindermen.

We answer each question in the affirmative.

Frank M. Perry died June 16, 1948, leaving a last will and testament, which was duly probated. The administration of the estate was moved to the circuit court. Frank M. Perry was the holder of a marketable title in fee simple to the lands involved in this proceeding, some 1,059.65 acres.

Under the terms of his will, his widow, Margaret Perry, was devised one-half the income from his entire estate during her

life, with the other half being devised to his sister, Edna Perry Arnold, for life, with the survivor of the two receiving the entire income for life. During this time, the executors were directed to "keep my entire estate together and control and manage it."

Upon the death of the life tenants, the entire estate was devised to the children of Perry's deceased sister, Ella Perry Dabney, except John Perry Dabney (now deceased) who was excluded from any interest in the lands in lieu of a cash bequest. If any child of Ella Perry Dabney should predecease the life tenants or either of them, the children of that child would take their parents' share.

The children of Ella Perry Dabney, other than John Perry Dabney (excluded) were Dorothy Dabney Smith, Elizabeth Gerber and Robert S. Dabney, III. Dorothy is dead and was survived by two children. Elizabeth is living and has three children. Robert is living, unmarried and has no children.

As of now, the two living children of Ella Perry Dabney each have a one-third remainder interest in the property, contingent upon their surviving the two life tenants who are still living. The two children of Dorothy Dabney Smith, Beverly Smith Bragg and Edna Smith Duer would receive the other third.

Among the respondents are the two living children of Ella Perry Dabney, all of her grandchildren and the only son of the excluded son who, under possible but not very probable conditions, could inherit under the law of descent and distribution. Thus, every class of unborn remaindermen are represented by a living member of that class who have or possibly might have some interest in the estate of Frank M. Perry.

James E. Rice, the surviving executor of Perry's last will and testament, joined with Edna Perry Arnold, one of the life tenants, in petitioning the court to order a sale of the 1,059.65 acres to Monsanto Company for $857,313.00, pursuant to an option signed by all persons in esse having any interest under Perry's will, including the life tenants. It was alleged that the purchase price is in excess of the price that might reasonably be expected at public sale, that the sale is to the benefit of the owners of all interests in the property, and that the money received from Monsanto, if invested in government bonds, would produce more than the yearly income presently derived from the lands.

The proof was that the net average income from the property for the years 1960 through 1965 was slightly more than $15,000 per year. Investment of the purchase price in five per cent government bonds would realize $43,865 per year. Three appraisers had appraised the property at $350 to $375 per acre, while Monsanto's offer was approximately $809 per acre.

The trial court ordered the sale of all interests in the said property described in the bill of complaint to the said Monsanto Company for the said sum of $857,313.00, including all right, title and interest of the heirs of Frank M. Perry, deceased, including all reversionary interests in the said property, and decreed that the register should reinvest the proceeds of said sale for the benefit of all the parties and classes of parties having any interest or expectancy or possibility of any interest in and to the said lands described in the bill of complaint, in U. S. Treasury bills, notes or bonds, and the said interests, expectancies of interest and the possibilities of interests of all of such parties and classes of parties in and to the lands described in the bill of complaint were terminated and invested in said Monsanto Company, and the said interests of said parties were attached, in substitution, to the proceeds of the said sale of said lands in accordance with the terms of the will of Frank M. Perry, deceased.

The cause was contested in the lower court by the guardian ad litem for the unborn children of the children of Ella Perry Dabney, deceased, and he is the appellant here. We quote from his brief:

"Appellant does not deny the assertion that the substitution of the proceeds of the sale for the land conveyed is advantageous to all parties and interests, including those unborn remaindermen whom appellant was appointed to represent as guardian *ad litem*. However, the lack of precedent in Alabama for a decree of this nature, the value of the estate involved, and the fact that the interests of unborn remaindermen will be bound if this decree is allowed to stand compel appellant to insist that the Circuit Court of Lauderdale County, Alabama, in Equity, erred in the rendering of its final decree and its decree confirming sale."

Appellant also states that he "has no argument with the interpretation of this will as set out in the decree of the lower court." He does contend that the equity court does not have the power or "jurisdiction" to order the sale.

It is agreed that this exact situation has not been before this court in the past. But it has been before other courts.

An excellent statement appears in 33 Am. Jur., Life Estates, Remainders, etc., § 265, p. 743:

"There has grown up in the last century in a group of American cases a doctrine, the boundaries of which are not yet completely defined, under which a court of equity, in the exercise of inherent equity powers, will order a judicial sale under supervision of the court, of the entire fee or title of real property in which present interests such as life estates and future interests such as vested or contingent remainders, executory limitations, etc., have been created, with subsequent reinvestment of the proceeds of such sale for the benefit of the holders of the respective interests in the property sold. This exercise of equity power is independent of statute, and has been exercised, thus far, in cases where at least some of the holders of future interests either lack capacity or are as yet unborn, are amply represented in the proceedings, and will be benefited by such sale and reinvestment. The power of equity to direct a sale of land and reinvestment of the proceeds will be exercised in the case of legal life estates and remainders just as in the case of trusts. * * *

"The reasons for the development of the peculiarly American doctrine of non-statutory equitable judicial sale of entire interests or the fee in property given to various holders of present and future interests are typical of the causes of general development of equitable jurisprudence, and are stated with equal emphasis not only in the very recent decisions espousing the principle, but in its first progenitors. * * * In cases where partition cannot be maintained, however, it is often necessary to afford relief as between holders of present and future interests, as a matter of social policy, and it is necessary to the best interests of society that there be a power lodged in some judicial tribunal, authorized, in certain exigencies, to unfetter the titles of estates, since otherwise they may be shackled to an inconvenient extent. In accordance with their traditional policy, the courts of equity have assumed jurisdiction to rectify this evil, with cogent reasoning upon which to base their stand. To say that the court cannot, under circumstances where both present and future interests in property are endangered through lack of a sale thereof, convey away the fee of the property by ordering a judicial sale and reinvestment of the proceeds, would be to assert a doctrine which would render conditional limitations and contingent remainders an intolerable evil to a growing and prosperous community. Thus to shackle estates without the power of relief, unless every person having a contingent and possible interest could be brought before the court as a party complainant or defendant, according to the usual forms and ordinary practice of the court, would be to sacrifice the rights and interests of the present generation to those of posterity, and of

citizens to aliens, and would place the title to a vast amount of property in peril. If the whole property of the country were thus situated, it is obvious that all improvement and advance would be completely checked. * * *

"Many of the courts have treated the doctrine under which equity orders a judicially conducted sale for reinvestment of property held in present and future interests as an exercise of the inherent power under which equity converts realty into personalty. Such jurisdiction is separate and apart from the similar jurisdiction exercised in cases of partition and in cases of the conversion of property of infants, but similar to such cases, it falls within the inherent jurisdiction of such courts, in cases where the nature of estates and the situation of property make it eminently judicious, if not absolutely essential, in the interest of all persons in esse as well as in posse, that a conversion should take place."

A similar discussion appears in 31 C. J. S. Estates § 89, p. 170.

The case of Kennedy v. Durham, 220 Ga. 310, 138 S.E.2d 567, is in point with the instant case. Mrs. Eula Pauline Kennedy, as a life tenant of described property, brought an equitable petition seeking an order allowing a sale of the property and the reinvestment of the proceeds of the sale. The land in question was vacant farm land, and petitioner alleged that the land was peculiarly adapted to development for residential purposes and that the property was at its maximum value. The Supreme Court of Georgia held that a court of equity has the power to order the sale of property held by a life tenant and divest the title of remaindermen, even though some of the remaindermen are minors or persons unborn, where it is in the best interest of the life tenant and contingent remaindermen to order a sale of the property and reinvestment of the proceeds of the sale. To the same effect is Cooney v. Walton, 151 Ga. 195, 106 S.E. 167.

In the case of Wing v. Wing, 212 Ark. 960, 208 S.W.2d 776, the primary question was whether or not the chancery court had power to direct a sale of real property for reinvestment while there was a possibility that remaindermen not in being might take. The court held that where there is created a class of contingent remaindermen, some not in being at the time, a suit for sale and reinvestment may be maintained, and those in being sufficiently represent the whole class. This is treated as a doctrine of necessity, for otherwise, the jurisdiction of the court would be entirely defeated, because of the fact that in the future, there might arise other parties not then in being. The court said the theory upon which the doctrine of necessity rests is, (as stated in Gavin v. Curtin, 171 Ill. 640, 49 N.E. 523, 40 L.R.A. 776) that "[t]he possible persons not in esse are therefore represented by the parties before the court, and, if they ever come into being, will be bound and concluded by the decree."

■ We hold that our equity courts do have the power and authority to order a judicial sale of lands for reinvestment under the supervision of the court of the entire fee or title of the real property when there may be contingent interests in unborn contingent remaindermen.

Appellant also contends that the court erred in confirming the sale and terminating any claim of interest in the lands by unborn contingent remaindermen. This point has been answered by this court.

In Elmore v. Galligher, 205 Ala. 230, 87 So. 349, the trial court had ordered lands sold for reinvestment when there were possible unborn contingent remaindermen. The will in that case said, in part: "It is my will that my real estate shall not be sold but shall be kept together until my youngest daughter becomes of age * * *. I further will that my real estate belongs to my daughters only during their life time and to their children, if any, at their death, * * *." At the time of the decree of the equity court, neither of the two daughters

had any children. Later, and after the property had been sold and the proceeds reinvested, one of the daughters had three children. The question before the court was whether the rights of these children were bound by the decree for sale and reinvestment. This court said:

> "The doctrine of equity courts, that the property rights of unborn contingent remaindermen or executory devisees may be concluded by judicial decree in cases where they are virtually represented by living parties who are before the court, has been recognized and applied by this court.
>
> \*   \*   \*   \*   \*   \*
>
> "The decree in equity of the city court of Montgomery in the suit of Emily Clisby v. Peter B. Mastin, et al. (1893) was a valid exercise of the jurisdiction and powers of the court with respect to the estate of the then infant complainant therein, and, under the circumstances exhibited, was binding upon the interests of the after-born children of Mary Clisby Smith, so that the purchasers at the sale made pursuant thereto acquired as to them, as well as to all parties actually before the court, a fee-simple title to the lot here in question."

Many cases from other jurisdictions are cited in the opinion of the court.

In Tolley v. Hamilton, 206 Ala. 634, 91 So. 610, the court wrote:

> "It may be true that these complainants, or some of them, were not in esse when the former bill was filed and the decree was rendered, but members of the same class to which they belong were and were made parties to the proceedings, and the decree rendered against them would be binding upon after-born members of the same class with identical rights. Letcher v. Allen, 180 Ala. 254, 60 South. 828; El-

more v. Galligher, 205 Ala. 230, 87 South. 349."

See also Bibb v. Bibb, 204 Ala. 541, 86 So. 376. All of the Alabama cases cited supra are reviewed and approved in Ussery v. Darrow, 238 Ala. 67, 188 So. 885.

Applying the rule of these cases to the instant case, any unborn children who would receive a contingent remainder interest from the sale of the property here involved are represented as a class by the guardian ad litem and have identical rights with members of the same class now in esse, namely the children of the children of Ella Perry Dabney, deceased, and the class represented by John Perry Dabney, Jr. (the son of the excluded nephew). Each of these children was made a respondent in this cause, and the rights of an unborn contingent remainderman were concluded by the decree of the circuit court which we have affirmed.

Affirmed.

LIVINGSTON, C. J., and SIMPSON and HARWOOD, JJ., concur.