JACKSON *v.* BECKTOLD PRINTING & BOOK MANUFACTURING

COMPANY.

Opinion delivered June 15, 1908.

1.  EVIDENCE—PAROL EVIDENCE CONTRADICTING RECORD OF JUDGMENT.—Parol evidence is admissible to show that a decree which appears regular on its face was actually rendered in vacation and was consequently a nullity. (Page 596.)

2.  LACHES—UNREASONABLE DELAY.—A suit to set aside a foreclosure decree in chancery alleged to have been rendered in vacation will be barred by laches where plaintiffs, knowing of such fact, have waited nearly five years before bringing suit, and until after the defendants have become purchasers of the lands affected, have sold large quantities of timber from them, changed the fences and used the lands as owners by purchase under a valid decree. (Page 597.)

3.  CURTESY—EQUITABLE ESTATE.—A husband is entitled to curtesy in an equity of redemption of the lands of his wife. (Page 600.))

Appeal from Clay Chancery Court; *Edward D. Robertson,* Chancellor; affirmed.

The present suit, filed on the 11th day of August, 1902, by appellants, the husband and children of the late Fannie C. Jackson, against appellees, was brought to set aside a decree of the circuit court sitting in chancery purporting to have been rendered at the January term, 1897, of the court, but alleged to have been rendered and entered of record in vacation in July, 1897, and to redeem certain lands ordered sold by said decree, and for an accounting of the mortgage debt, rents, profits and waste.

Fannie C. Jackson in her lifetime was the owner of the premises referred to, and in March, 1892, she executed a mortgage thereon to W. G. Bryan, which he, in October, 1895, assigned to W. B. Becktold & Company, a partnership.

On the 29th day of April, 1896, Becktold & Company brought suit to foreclose said mortgage and made said Fannie C. Jackson and W. G. Bryan parties defendant thereto.

In May, 1896, Fannie C. Jackson departed this life, intestate, leaving her surviving George M. Jackson, Sr., her husband, and the remaining plaintiffs and appellants in the present suit as their children and her sole heirs at law. On the 16th day of July, 1896, Becktold & Company commenced a new suit to foreclose the mortgage above mentioned, in which all the appellants except George M. Jackson, Sr., were made defendants. In January, 1897, the appellee Becktold Printing & Book Manufacturing Company, hereafter called "Becktold Company," a corporation, was by order of the court, on its own application and on the application of Becktold & Company, substituted as plaintiff in that foreclosure proceeding by reason of the fact that Becktold & Company had, pending the action, assigned the mortgage to the corporation.

There was entered upon the records of said court a judgment and decree finding that there was due upon the mortgage the sum of $5525 and directing a sale of the premises for the payment thereof. The records of the court show that this decree was rendered and entered of record during the January

term, 1897. Pursuant to the directions of the decree, the lands were advertised for sale by the commissioner of the court, and on the day of sale were struck off to the appellee Becktold Company. The sale was reported to the court and duly confirmed at the next term thereof. A deed was executed by the commissioner to said Becktold Company, which was approved by the court. Thereupon the said Becktold Company entered into possession of said lands. The complaint alleges that it went into possession of all said lands about the 1st day of January, 1898.

On the 7th day of February, 1898, the Becktold Company, by its deed duly recorded, conveyed a part of these lands to B. B. Biffle. Thereafter, and before the institution of this suit, Biffle conveyed a part of the lands so purchased by him to other appellees herein. The Becktold Company also, by direct conveyances duly recorded, conveyed a part of the land to other appellees herein. The record does not disclose whether any of the lands are now owned by the Becktold Company, nor does it contain a complete description of the lands sold to Biffle. It only shows the date of the sale to Biffle and contains a description of the lands sold by Biffle to other purchasers.

The testimony in this case shows that the foreclosure suit was not heard and determined at the January term, 1897, of the court, but that the case was taken under advisement until after the adjournment of the court, and it was agreed by the parties to the suit that the finding of the judge should be made in vacation and the result embodied in a decree to be entered of record as if in term time. Pursuant to this understanding, the judge of the court decided the case, in July, 1897, in vacation, and caused a decree to be prepared in accordance with his findings, and had the same entered of record as if the proceedings were had during the January term, 1897, of the court.

George M. Jackson, Sr., was present at the January term, 1897, when the agreement for rendering and entering of record the decree in vacation was made. He represented the defendants to that suit. They were non-residents and not present. Maude S. Jackson was alleged in the complaint in the foreclosure proceedings to be a minor, and a guardian *ad litem* was appointed to make her defense. His answer denies that she was at that

time a minor. The present record does not disclose whether or not she was at that time a minor, nor at what time she reached her majority, but she sues as an adult in the present case.

George M. Jackson, Sr., testified that he objected to the decree rendered in vacation after it was made, and told the Becktold Company that the defendants, all of whom he represented, would not be bound by the decree. No objections were made to the confirmation of the sale, or to any of the subsequent proceedings in the case.

As above stated, the present suit was instituted to set aside the decree rendered in the foreclosure proceedings.

The defendants, appellees in this court, filed separate answers containing a general denial of the allegations of the complaint and pleading laches and estoppel on the part of the plaintiffs to maintain their action.

The chancellor found as a fact that the foreclosure decree was in vacation of the court, but held that such facts could only be shown by the record in the cause, and therefore dismissed the complaint, except as to George M. Jackson, Sr., for want of equity, because the record in the cause did not show that the foreclosure decree was pronounced in vacation.

The court also found that George M. Jackson, Sr., as the husband of said Fannie C. Jackson, had an interest in the lands, and was not bound by the decree rendered in the foreclosure proceedings because he was not a party thereto, and appointed a commissioner to state an account between him and the Becktold Company.

This decree was rendered at the March term, 1907, of the court, and the Becktold Company excepted to that part of the decree which held that G. M. Jackson, Sr., had an interest in the land, and prayed an appeal to the Supreme Court, which was granted.

In October, 1907, the plaintiffs in the court below were granted an appeal by the clerk of this court.

*J. D. Block* and *F. H. Sullivan,* for appellants.

1. This is not a collateral attack, but is as direct as the machinery of the law will permit. 50 Ark. 190. In fact, it is

not an attack either direct or collateral upon a judgment, because, if the decree was rendered in vacation, it was and is void. 71 Ark. 226. And the court unquestionably erred in holding that oral testimony was not admissible to show that the judgment in the foreclosure suit was not rendered in term time. `Id.;` 40 Ark. 224; 75 Ark. 16; 79 Ark. 287; 82 Ark. 192; 6 How. 260; 1 Freeman on Judg. 4th Ed., § 121, p. 200; 57 Miss. 730.

2. If the original decree was void, the sale and confirmation cannot stand. 71 Ark. 311. See also 49 Ark. 416; 34 Ark. 569; 65 Ark. 553.

3. On the death of Fannie C. Jackson, leaving her husband and their children surviving, the husband became tenant by the curtesy in the equity of redemption. 15 Ark. 484; 47 Ark. 175; 60 Ark. 70; 6 Ark. 269; 14 Ark. 637. And it is the rule that all persons possessing any legal or equitable interest in the premises are indispensable parties to bill to foreclose a mortgage. 3 Ark. 364; 32 Ark. 297; 39 Ark. 61. One who has a legal or equitable interest in the premises, and has not been made a party to the foreclosure proceedings, is entitled to redeem. 37 Ark. 632; 31 Ark. 91; 35 Ark. 67; 77 Ark. 479.

4. Appellant is not debarred from the right to relief by laches. 21 Ark. 379; 57 Ark. 198; 11 Am. & Eng. Enc. of L., 2 Ed. 247; 13 Ill. 654; 187 Mass. 207; 70 N. H. 602; 83 Ark. 160.

*L. Hunter* and *J. L. Hornsby,* for appellees.

1. A judgment record cannot be contradicted by parol evidence. 24 Am. & Eng. Enc. of L. 2 Ed. 193; 35 N. J. Eq. 534; 8 Humph. 363; 11 *Id.* 176; 52 Ala. 55; 78 Ky. 580; 119 Ill. 320; 57 Ill. 608; 125 Ill. 230; 123 Mich. 699; 24 Ga. 429; 50 Ga. 487; 90 Ind. 577; 2 Biss. (U. S. C. C.) 268; 33 Ark. 218.

2. A judgment will never be vacated unless there is a valid defense to the action. Here the appellants present the same defense only which was passed on in the trial of the foreclosure suit. 52 Ark. 80; 50 Ark. 458; 54 Ark. 539; 6 C. C. A. (U. S.) 83; 11 Enc. Pl. & Pr. 1192 et seq.

3. Confirmation of the sale under the foreclosure decree validates all prior action, and estops appellants from com-

plaining.    53 Ark. 110; 83 Ark. 154, 161; 76 Ark. 146, 149; 74 Ark. 81.

4. Appellants are barred by laches. The decree was rendered in January, 1897, and the bill to vacate was filed August 11, 1902, more than five years thereafter. Kirby's Dig., § 5074; 18 Am. & Eng. Enc. of L. 2 Ed. 97; 17 *Id.,* 2 Ed. 841; 19 Ark. 16; 35 Ark. 141; 42 Ark. 289; 55 Ark. 93; 71 Ark. 709; 12 Enc. Pl. & Pr. 99; 16 Ia. 310; 44 Wis. 568; 135 U. S. 304; 34 S. W. 106; 92 N. C. 236; 113 Ind. 131; Walk. Ch. (Mich.) 309; 36 Mich. 97; 48 Mich. 194.

5. George M. Jackson cannot recover because, (1) if he has any right it is the legal right to possession as tenant by the curtesy, and he has no standing in a court of equity; (2) he has, in fact, no estate by the curtesy; (3) he is estopped by his conduct, having taken part in and assumed control of the former trial. Elliott on Ev., § 1524; 11 Enc. Pl. & Pr. 1172; 63 Mo. 193; 31 Ia. 80.

HART, J. (after stating the facts). The evidence in this case shows that the decree was rendered in vacation. The chancellor so found, but was of the opinion that such fact could only be shown by the record in the cause, and therefore excluded from his consideration all the evidence contained in the deposition of witnesses showing or tending to show that the decree was actually rendered in vacation. In this there was error. The precise question was otherwise determined in the case of *Biffle* v. *Jackson,* 71 Ark. 226. The court said: "That the original decree was rendered in vacation is abundantly established by the testimony both of witnesses and the record, since it is shown that the depositions upon which the decree is based were taken after the adjournment of the court at which the decree purports to have been rendered."

It was held in the same case and in the later case of *Boynton* v. *Ashabranner,* 75 Ark. 415, that a decree in chancery rendered in vacation, though entered on the judgment record in a blank space left for the purpose, is a nullity. This is the general rule, in the absence of statutory provisions providing for the rendition of decrees in vacation.

If the fact of its rendition in vacation could not be shown by testimony, and could only be shown by the record, we would

have the anomolous condition, in cases like the present one, of a decree being a nullity and of the parties affected by it being denied the right to establish that fact.

In the case of *Bobo* v. *State*, 40 Ark. 224, Chief Justice ENGLISH said: "Courts have a continuing power over their records not affected by lapse of time. Should the record in any case be lost or destroyed, the court whose record it was possesses the undoubted power, at any time afterwards, to make a new record. In doing this it must seek information by the aid of such evidence as may be within reach tending to show the nature and existence of that which it is asked to establish. There is no reason why the same rule should not apply when, instead of being lost, the record was never made up, or was so made up as to express a different judgment than the one pronounced by the court. Hence the general rule that a record· may be amended, not only by the judge's notes, but also by other satisfactory evidence."

This rule has been followed ever since by this court, and was reiterated in the case of *Ward* v. *Magness*, 75 Ark. 12.

While the consideration of public policy which requires that a record shall be taken as importing verity yield to equities which require it to speak the truth, it does so only when the party seeking the relief is not guilty of laches. *State* v. *Hill*, 50 Ark. 461. Mr. Freeman, in his work on Judgments, § 102, says that the rule will be strictly applied, and that any laches shown against the moving party will prove fatal to his relief. This court has held that the writ of certiorari will be refused when the party seeking it fails to show that he has proceeded with due expedition after discovering that it was necessary to resort to it. *Black* v. *Brinkley*, 54 Ark. 372; *Lyons* v. *Green*, 68 Ark. 205. The reason of the rule is based upon grounds of public policy, and the doctrine of laches is grounded upon the same principle. Its aim is the discouragement, for the peace and repose of society, of stale and antiquated demands. 18 Am. & Eng. Ency. of Law, p. 98.

The general rule of the doctrine of laches, as stated by Mr. Justice Harlan, has been quoted with approval by this court in the case of *Sturdivant* v. *Cook*, 81 Ark. 284. He said: "But it is now well settled that, independently of any limitation pre-

scribed for the guidance of courts of law, equity may, in the exercise of its own inherent powers, refuse relief where it is sought after undue and unexplained delay, and where injustice would be done in the particular case by granting the relief asked."

Appellants contend that the cases of *Earle Improvement Co.* v. *Chatfield*, 84 Ark. 296, and of *Updegraff* v. *Marked Tree Lumber Co.*, 83 Ark. 160, are decisive of the present case. In the former case, the following language is used: "In the absence of some intervening equity calling for application of the doctrine of laches, equity by analogy follows the law, and will not divest the owner of title by lapse of time shorter than the statutory period of limitation." In the Updegraff case the court said: "The supervening equities referred to in that case (meaning the Earle case) mean some element of estoppel aside from the mere lapse of time, payment of taxes and enhancement in value." It will be observed that both these cases were suits to quiet title; that the lands were unimproved and unenclosed, and therefore under the statute deemed to be in the possession of the parties who paid the taxes, and against whom the doctrine of laches was sought to be invoked. There was no element of estoppel, aside from the mere lapse of time, payment of taxes and enhancement in value of the land.

The rule as applied to facts similar to those in the present case is aptly stated in the case of *Galliher* v. *Cadwell*, 145 U. S. 368, and approved by this court in the case of *Rhodes* v. *Cissel*, 82 Ark. 371. It is as follows: "The cases are many in which this defense (laches) has been invoked and considered. It is true that by reason of their differences of fact no one case becomes an exact precedent for another, yet a uniform principle pervades them all. They proceed on the assumption that the party to whom laches is imputed has knowledge of his rights and an ample opportunity to assert them in the proper forum, that by reason of his delay the adverse party has good reason to believe that the alleged rights are worthless or have been abandoned, and that because of the changes in conditions or relations during this period of delay it would be an injustice to the latter to permit him to now assert them."

"Now, the doctrine of laches in courts of equity is not an arbitrary or technical doctrine. When it would be practically

unjust to give a remedy, either because the party has, by his conduct, done that which might fairly be regarded as equivalent to a waiver of it, or when, by his conduct and neglect, he has, though perhaps not waiving that remedy, yet put the other party in a situation in which it would not be reasonable to place him if the remedy were afterwards to be asserted; in either of these cases lapse of time and delay are most material. But in every case, if an argument against relief, which otherwise would be just, is founded upon mere delay, the validity of that defense must be tried upon principles substantially equitable. Two circumstances, always important in such cases, are the length of the delay and the nature of the acts done during the interval, which might affect either party and cause a balance of justice or injustice, in taking the one course or the other, so far as relates to the remedy." *Hall* v. *Otterson,* 52 N. J. Eq. 535.

In the present case, the parties invoking the doctrine of laches, under and by virtue of the decree of foreclosure now sought to be annulled, became the purchasers of the lands, and were placed in possession of them. They have sold large quantities of timber from them, changed the fences on the cleared lands, and in all respects used them as owners by purchase under a valid foreclosure decree. All these facts were known to appellants. George Jackson, Sr., employed for appellants counsel to represent them in the foreclosure proceeding. He knew that their counsl agreed to a vacation decree. He was advised that this decree could be annulled, but would be valid unless appellants moved in apt time to set it aside. No effort was made to oppose the confirmation under the sale or the entry into possession by the purchasers by virtue of the deeds executed to them pursuant to the decree. They knew the lands were being sold off from time to time; for the knowledge of George Jackson, Sr., must be imputed to them, he being their agent in all respects concerning the lands. They made no effort to settle off the mortgage debt or in any way to assert any rights to the lands. They did not move to set aside the decree until nearly five years after it was rendered. They do not claim to have been misled by any act of the parties to the suit, no excuse is given for the delay, which may be attributable to their own culpable negligence.

These facts render appellants guilty of laches in not sooner moving to annul the foreclosure decree, and make it inequitable to divest the numerous purchasers of rights which they acquired under what purported on its face to be a valid decree, and which they were led to believe appellants had acquiesced in by their delay and negligence in moving to have it annulled and set aside.

Appellees insist that a husband does not have curtesy in the equity of redemption of the lands of his wife. In this they are in error. It is now fully settled in equity that the husband shall have curtesy of trust as well as of legal estates and of an equity of redemption. *Davis* v. *Mason*, 1 Peters (U. S.) 503; *Hart* v. *Case*, 46 Conn. 212; *Robinson* v. *Lakeman*, 28 Mo. App. 135; *DeCamp* v. *Crane*, 19 N. J. Eq. 166; 2 Jones on Mortgages, § 1067. "Where a woman, having issue, dies possessed of an equitable estate in land, of which her husband holds the legal title, the husband is entitled to curtesy therein." *Ogden* v. *Ogden*, 60 Ark. 70.

The decree is affirmed for the reasons given in this opinion.