PEARL CITY PACKET COMPANY *v.* THOMPSON.

4-5979 143 S. W. 2d 14

Opinion delivered June 17, 1940.

*Ross Mathis,* for appellant.

*W. J. Dungan,* for appellee.

HUMPHREYS, J. This suit was filed in the chancery court of Woodruff county, by appellants against appellee, on September 11, 1933, to recover $1,031.99 due the Pearl City Packet Company for gravel which it had shipped to and was received by J. L. Bronte as road superviser for said county. It was alleged in the complaint that the roads in Woodruff county were worked under supervision of the county judge and two commissioners; that the county judge and these commissioners employed J. L. Bronte under an agreement that he should receive $100 per month out of the highway fund of said county for supervising the roads and purchasing materials and machinery for the repair thereof and employing necessary labor and that the claims for labor, materials and machinery should be filed with him and that he should present same to the county judge for allowance and that after being allowed the county would issue to him a check to cover the claims, and that he would pay out of the check the amounts allowed to the respective parties to whom same was due; that this arrangement had been in operation for about two years and that acting under this arrangement J. L. Bronte filed his verified claim in the county court on September 2, 1932, showing itemized sums for a total of $2,327.83 due some thirty parties for labor, materials, etc., including claims to appellee in person and to his store operated under the name of M. D. Thompson & Son and the claim of $1,031.39 for gravel to the Pearl City Packet Company; that the claims due each party were properly verified and attached to the verified claim of J. L. Bronte and that after examining them the county judge allowed same and directed county treasurer to issue a check for the purpose of paying the various claims against the account of Woodruff county

in the Farmers National Bank of Cotton Plant which the treasurer did; that the check bore the statement that it was to cover highway warrant 1,074 which warrant was issued in payment of the claim presented by J. L. Bronte; that the check was turned over by J. L. Bronte to appellee for the purpose of paying to each claimant the amount due him; that J. L. Bronte was an agent or trustee of the county for the purpose of paying the various claimants the respective amounts due them and that in receiving the check from J. L. Bronte appellee either agreed to or had sufficient knowledge of the agency of J. L. Bronte to charge him with the duty of making the payments to the various claimants; that after receiving the check appellee appropriated the major part thereof to the payment of a pre-existing debt due him or M. D. Thompson & Son and refused to pay the claim of Pearl City Packet Company the amount of $1,031.39 due it for gravel furnished to J. L. Bronte for the use of said county and prayed for judgment against appellee in said amount. Appellee interposed the defense that he assisted J. L. Bronte in getting the check cashed with the understanding that Bronte would pay M. D. Thompson & Son the pre-existing account J. L. Bronte owed said firm.

The trial court heard testimony in the form of depositions on the issues involved and made a general finding for appellee and dismissed appellants' complaint, from which is this appeal.

There is no dispute in the record concerning the employment of J. L. Bronte as superviser of the roads in Woodruff county under an agreement that Bronte, under the supervision and direction of the county judge, should employ the labor, purchase materials and machinery for repairing and building roads in said county, nor that under said arrangement the roads were repaired and built for about two years prior to September 2, 1932. The record also reflects that during said period prior to September 2, 1932, J. L. Bronte, under the supervision of the county judge, employed all labor, purchased all materials, machinery, etc., and that each month J. L. Bronte

would have all claims for labor, materials, machinery, etc., itemized by the several claimants, sworn to and filed with him and that he would incorporate them in one general claim and present them to the county judge for allowance, and that after the claims were allowed or approved the county treasurer would issue a check to J. L. Bronte to cover the several claims and that J. L. Bronte would then pay the several claimants the amounts which had been allowed him for them. The record also reflects that on September 2, 1932, he filed a general claim against the county for $2,327.83 covering some thirty odd claims in which was included the claim due the Pearl City Packet Company for gravel in the sum of $1,031.39. The record reflects that on said date, that is September 2, 1932, a check was issued to J. L. Bronte by Edgar Miller, county treasurer, for $2,327.83 in the following form:

"Edgar Miller No. 451

"County Treasurer

 "Augusta, Ark., Sept. 2nd, 1932

"Pay to the order of J. L. Bronte, $2,327.83

"Two Thousand, Three Hundred, Twenty Seven and 83/100 DOLLARS

"The Farmers National Bank

"81-652 Cotton Plant, Ark. 81-652

 "Edgar Miller, County Treasurer.

"Highway Warrant No. 1074."

The check was cashed by the Bank of McCrory. Vance M. Thompson testified that the check was not indorsed by him or by M. D. Thompson & Son, his trade name, but that same was indorsed by J. L. Bronte, and delivered to the Bank of McCrory; and that the Bank of McCrory gave M. D. Thompson & Son credit for $1,512.83 and paid the difference in cash to J. L. Bronte and that M. D. Thompson & Son gave a credit to J. L. Bronte on their ledger of $1,476.08 which was a little less than the $1,512.83 deposited out of the check in said bank to the credit of M. D. Thompson & Son.

The check was introduced in evidence and the indorsements appearing on the check clearly discernible are J. L. Bronte, the Bank of McCrory, the Bankers Trust Co., of Little Rock, and the Memphis Branch of the Federal Reserve Bank. By examination of the check closely it is apparent that a part of the trade name of appellee had been indorsed on the check and John M. Bryan, cashier of the Bank of McCrory, in which appellee is a stockholder and director, testified the indorsement of the trade name of appellee was also on the check, the indorsement having been made by rubber stamp. As stated above, Vance M. Thompson swore that neither his name nor his trade name was indorsed on the check, but that he was merely a go-between in getting the Bank of McCrory to pay the check. John M. Bryan, the cashier of the Bank of McCrory, testified that the records of the bank show that M. D. Thompson & Son got a credit for $1,512.83, but that he did not know who got credit for the difference of $815 between the $2,327.83 check and the $1,512.83, and had no memory that he paid any cash to Bronte out of it; that he did not know who he paid the cash to.

Vance M. Thompson testified that the amount which J. L. Bronte owed M. D. Thompson & Son on September 1 was $1,195.82 which was about $280 less than the amount for which M. D. Thompson & Son took credit in the bank when the check was turned over to said bank, and that after J. L. Bronte left the county and a short time after he died he paid the $280 or M. D. Thompson & Son paid said amount for embalming the body of J. L. Bronte and some other indebtedness he owed. He also testified that after the question came up as to what disposition was made of the $2,327.83 between him and S. Heinemann, who was the president and manager of the Pearl City Packet Company, he offered to pay the Pearl City Packet Company the $280 that M. D. Thompson & Son had which was still due J. L. Bronte out of the $2,327.83 check.

S. Heinemann testified that on the 3rd of September, which was the next day after the county treasurer

had issued the check to J. L. Bronte, he went to see Vance M. Thompson, who he understood had gotten the $2,327.83 check from Bronte, and that Thompson told him he had mailed a check to him in a letter directed to him at Newport for the $1,031.39 which was included in the $2,327.83 check and that he and Bronte went over to the postoffice at McCrory to see if he could not get the letter back before it went out to Newport; that they could not find it, so three or four days afterward he called up Vance M. Thompson, the appellee, on the phone and informed him that he had not received the check; that Thompson said, "Well, I have taken it out of the mail"; that afterwards he went to see Mr. Thompson at McCrory in company with Judge McGregor and again told him he had not received the check and Thompson said that he would mail him the check for the amount as soon as the county check had cleared; that after Judge McGregor walked out Thompson told him that Bronte owed him something like $700 and that he was willing to pay him the difference and I could look to the county for the balance and I refused to accept his offer.

Judge Alex C. McGregor testified that he went in company with S. Heinemann to see Vance M. Thompson, and Mr. Heinemann said to Mr. Thompson, "Mr. Thompson, I have not received that check yet and I understand now that it was never put in the mail for me." Mr. Thompson didn't say that he didn't tell him that he had put it in the mail, but admitted that it had never been put in the mail.

Mr. Vernon Huff, a brother-in-law of Bronte, who had been a bookkeeper for M. D. Thompson & Son, was asked the following questions:

"Q. Was it the practice in the firm of M. D. Thompson & Son to handle Bronte's accounts against the county; in the last few months of his life, is it not true, that Bronte would turn over, in many instances, his entire checks and permit you all to handle them and make his payments to the different people?

"A. I couldn't say about that, I didn't handle it for several months previous to that."

"Q. Did you ever handle it that way?

"A. I have, yes, sir."

He further stated in the course of his testimony that he had handled the business of Bronte as road commissioner on orders of Bronte.

In the course of Thompson's testimony he admitted that the firm of M. D. Thompson & Son had sold Bronte for the use of the county a good many items and that neither he, Vance M. Thompson, nor M. D. Thompson & Son had presented claims directly to the county for the items and that in almost all instances where they had furnished him merchandise for the county Bronte had presented the claim and when he collected his check he would pay M. D. Thompson & Son.

These transactions covered a period of about two years or during the time that J. L. Bronte was supervisor of the roads in the county and reading the evidence as a whole we are convinced that, if Thompson did not know that the check for $2,327.83 covered the claim of the Pearl City Packet Company, he had sufficient notice as to the manner in which the business was transacted to have put him on inquiry. The check showed that it was for warrant No. 1074 and that it was drawn on county funds. In fact the claim which was presented on September 2, which the check was given to cover, contained a claim in favor of M. D. Thompson & Son for $51.82 and a claim of V. M. Thompson for $78.96 and those two items were included in the $2,327.83 check. Had appellee, when he was requested to cash the check, looked at the claim which J. L. Bronte had presented to obtain the warrant and check, he would have seen at once that $1,031.39 due the Pearl City Packet Company for gravel was included in the same claim, warrant and check. Another potent circumstance to show that appellee was not an innocent purchaser of the check is that he claimed to be a go-between in securing the money on the check for J. L.

Bronte. He testified positively that neither he in person nor M. D. Thompson & Son indorsed the check when in fact it was indorsed by M. D. Thompson & Son. His only purpose in denying the indorsement could have been that he wanted it to appear that J. L. Bronte had collected the money on the check and afterwards paid his pre-existing claim or account against Bronte. Again he admitted that he took credit at the bank for more than his account in the sum of about $280 and still had that excess in his possession when the question came up between him, S. Heinemann and Judge McGregor. If Thompson had no actual knowledge as to whose money was included in the check we think there is ample in this record to have put him on inquiry and even the most cursory investigation would have disclosed that the check contained $1,031.39 that had been turned over to J. L. Bronte for the Pearl City Packet Company. We cannot agree with the chancellor, under the record made, that appellee acquired the check from J. L. Bronte in good faith. Appellee admitted that he knew at the time he took the check over that J. L. Bronte had been discharged and was no longer in the employ of the county and that J. L. Bronte had no money with which to pay the various claims covered by the check except out of the check. Before acquiring the check we think it was his duty to make an investigation and find out whose money was included in the check. Under this record the money did not belong to J. L. Bronte except perhaps his salary of $100 per month and it would be inequitable to allow appellee to apply the money of the Pearl City Packet Company included in the check to the payment of a pre-existing claim of his own against J. L. Bronte.

It is quite clear to us that J. L. Bronte was acting in the capacity of trustee for the county and that under all these circumstances appellee was put on inquiry and that any reasonable investigation on his part would have disclosed that most of the money covered by this check was justly due to other parties.

Appellee contends that the appointment of J. L. Bronte as road supervisor was without authority in law.

It is unnecessary to determine that question. Even though the contract made with him was voidable, no action was taken to have it declared void, and on the contrary appellee has chosen to claim benefits under the contract. Under these circumstances appellee is estopped from claiming the contract was void.

The judgment is, therefore, reversed and the cause is remanded with directions for the trial court to render a judgment in favor of the Pearl City Packet Company against appellee for the amount of $1,031.39, with interest at six per cent. from September 11, 1933.