HARDY *v.* HILTON.

4-8251                                                        204 S. W. 2d 163

Opinion delivered June 30, 1947.

Rehearing denied September 22, 1947.

*O. E. Williams,* for appellant.

*C. D. Atkinson, Charles W. Atkinson, G. T. Sullins* and *Rex W. Perkins,* for appellee.

MINOR W. MILLWEE, Justice. This is a suit by appellants, Martha Stone Hardy, Duncan B. Stone and Edythe F. Stone Walker, to cancel certain deeds to appellees, and others, to 16 acres of land situated in and adjacent to the City of Fayetteville, Arkansas. The cause was submitted to the trial court upon the pleadings which consist of a complaint and answer together with numerous exhibits, and a stipulation of the parties.

The record discloses that Stephen K. Stone, grandfather of appellants, died testate in 1909, and under the terms of his will a 34½ acre tract of land, including the lands in controversy, was devised to his son and daughter-in-law, A. B. Stone and Edythe F. Stone, parents of appellants, for life, with remainder to appellants. A. B. Stone conveyed his life interest to his wife in 1915. In May, 1925, A. B. Stone and wife, Edythe Stone, together with appellant, Martha Stone Hardy, filed a petition to sell the 34½ acre tract and to reinvest the proceeds of the sale in a more suitable home for the parties, or in revenue producing securities. Appellants, Duncan B. Stone and Edythe F. Stone, minors, were made parties defendant, and a decree was entered in accordance with the prayer of the petition, but there was no sale of the property under this decree.

On March 4, 1926, another decree was rendered in the cause again authorizing the sale of the property for reinvestment. This decree shows service of summons on the minor defendants, the appearance of the defendants in person and by guardian *ad litem* appointed by the court, and answer of said guardian *ad litem.* The decree was rendered after evidence was heard on the petition and contains the following findings: "The court further finds that said land is not a suitable home for the said plaintiffs and defendants or any of either the plaintiffs or defendants, that it will require the expenditure of a large sum of money on said land in order to provide a

proper residence for either said Edythe F. Stone or of either of the plaintiffs or of said defendants which expenditure of money neither of the plaintiffs or defendants is in a position to expend; that said land does not and cannot produce revenue sufficient for its upkeep and maintenance. The court further finds that it is to the best interest of both the plaintiffs and of all the defendants that the property above described be sold at private sale and that the money derived therefrom be properly invested in a suitable home for the parties hereto or that the same be invested in either income real estate, stocks, bonds, mortgages or other securities to be approved before investment by the court.''

The decree further provided that the 34½ acre tract be sold as a whole, or in part, by L. B. Stone, who was appointed commissioner to conduct the sale and required to post bond for faithful performance of the decree. It was further ordered that the funds derived from the sale be impounded subject to investment under orders of the court for the use and benefit of Edythe F. Stone, as sole beneficiary of the life estate, and appellants, as remaindermen. The court retained jurisdiction for further proceedings that might be had in connection with any sale of the lands.

L. B. Stone failed to qualify and act as commissioner and on April 5, 1930, a decree was entered discharging him and appointing A. B. Stone commissioner to carry out the provisions of the 1926 decree. The 1930 order required A. B. Stone to make bond. On November 22, 1932, he filed a report of sale of the 16 acre tract in controversy to his sister, Amanda M. Stone, and submitted his deed as commissioner to the court for approval. On the same date an order was entered approving the sale and deed as follows: ''On this day A. B. Stone, duly appointed, qualified and acting as commissioner in the above entitled cause having submitted to this court his report of sale of the west sixteen acres of a tract of land involved in the above entitled cause, and having also submitted to the court his deed of conveyance of said sixteen

acres to the said Amanda M. Stone for the sum of $1,500 said report and deed are hereby in all things by the court approved.''

Amanda M. Stone held possession of the 16 acre tract from the date of her purchase until April 15, 1944, when she conveyed four acres of the tract to H. E. Parrish, trustee for the bondholders of two improvement districts in which the four acre tract was located. On April 21, 1945, H. E. Parrish conveyed said four acre tract to appellee, Bert S. Lewis, who redeemed the property from the state for delinquent taxes of 1932 and subsequent years.

Amanda M. Stone continued in possession of the remaining 12 acres and paid the taxes thereon until she died testate on March 12, 1945. The executor of her will was directed to sell all of her property, including the remaining twelve acre tract in controversy, and to distribute the proceeds of the sale among her brothers' children, including the appellants, in equal parts. Appellees, John M. Hilton and Mrs. Fannie Walker, purchased said 12 acre tract at the executor's sale on October 12, 1945, for $1,250. Appellants participated in a partial distribution of said estate as legatees under the will of their aunt, Amanda M. Stone. The funds distributed, and yet to be distributed, include proceeds of the sale of the 12 acre tract.

A. B. Stone died in 1945 and on April 8, 1946, Edythe F. Stone, his widow, conveyed whatever interest she had in the 16 acres in controversy to appellants who instituted this suit on May 23, 1946.

A decree was entered February 14, 1947, dismissing the complaint of appellants for want of equity and quieting the title of appellee, Bert S. Lewis, to the four acre tract in controversy; also quieting the title of appellees, John M. Hilton and Fannie Walker, to the 12 acre tract.

Appellants do not challenge the jurisdiction of the chancery court over the parties or the subject matter of the decree rendered in March, 1926, under which the sale

of the lands was made. They recognize the rule announced in *Bedford* v. *Bedford,* 105 Ark. 587, 152 S. W. 129, where this court held that equity had jurisdiction to order the sale of property for reinvestment in which there were different estates involved, including contingent remainders, notwithstanding the fact that one of the remaindermen is a minor. Chief Justice McCULLOCH, speaking for the court in that case, said: "This court held, in *Watson* v. *Henderson,* 98 Ark. 63, 135 S. W. 461, that courts of equity have no jurisdiction to order the sale of a minor's lands for reinvestment, the exclusive jurisdiction over the estates of minors being vested by the Constitution in probate courts.

"The fact, however, that one of the class of contingent remaindermen is an infant does not deprive the chancery court of jurisdiction, if jurisdiction is otherwise conferred. The fact that the probate court, has exclusive jurisdiction over the estates of infants does not deprive the chancery courts of jurisdiction to sell parts of their estates, for instance, for the purposes of partition, or for the foreclosure of liens, or in other cases where, upon other grounds, jurisdiction is conferred upon chancery courts. The question in this case is not whether the jurisdiction is exclusively vested in some other court, but whether there is any authority to sell lands for reinvestment where there are different interests or estates, including contingent remainders." The court then affirmed the decree of the chancery court approving a private sale of the lands for the purpose of reinvestment, saying: "It is the duty of the chancery court, not only to safeguard the sale itself, but to follow up the reinvestment of the proceeds so as to see to it that the will of the original testator is carried out. This seems to have been done by the court in the present instance."

For reversal of the decree appellants earnestly insist that no bond was required of their father as commissioner in the sale of the lands to their aunt, and that the consideration for the deed was not impounded for the

purpose of reinvestment as provided in the 1926 decree. Appellants so alleged in their complaint, but these allegations were denied in the answer of appellees and the burden of proof was upon appellants on these issues. Appellants offered no proof in support of these allegations except the orders and records of the court. Under the decree appointing A. B. Stone commissioner to sell the lands, or a part thereof, for reinvestment he was required to make bond, and in the order approving the sale and deed he is designated as the ''duly appointed, qualified and acting'' commissioner. The chancery court is a court of general or superior jurisdiction and had jurisdiction of the parties and subject matter and all reasonable presumptions must be indulged in favor of the regularity and validity of the proceedings on collateral attack. In *Hooper* v. *Wist,* 138 Ark. 289, 211 S. W. 143, the court said: ''It is well settled in this State that in a collateral attack upon a judgment of a court of general jurisdiction every presumption will be indulged in favor of the jurisdiction of the court and the validity of the judgment or decree.''

While the decree under which the land was sold directed the reinvestment of the proceeds of the sale either in a more suitable home for the parties or revenue producing securities, the record is silent as to whether this requirement was followed up by the court. The contention of appellants is that the court was without authority or jurisdiction to confirm the sale without an affirmative showing in the record that the consideration was actually paid into court and reinvested for the benefit of the life tenant and remaindermen. This contention is contrary to the general rule that proceedings of a court of superior jurisdiction with respect to jurisdictional facts, as to which the record is silent, are presumed to be within the scope of its jurisdiction, until the contrary is shown. The case of *Flowers* v. *Reece,* 92 Ark. 611, 123 S. W. 773, involved a collateral attack on a judgment of the probate court, and this court said: ''The rule is that where the record is silent with respect to any fact necessary to give the court jurisdiction, it will be

presumed that the court acted within its jurisdiction.''
Since appellants offered no proof to sustain the allega-
tion of their complaint that the funds were not impound-
ed for reinvestment, other than the mere silence of the
record on this point, we must indulge the presumption
that the chancery court was acting within its jurisdiction
when it approved the commissioner's sale and deed to
Amanda M. Stone.

Appellees pleaded the statute of limitations, laches
and estoppel in their answer. According to the stipula-
tion of the parties the youngest of the appellants, Edythe
F. Stone Walker, was 33 years of age at the time of the
trial and must have been 17 or 18 years of age at the
time of the commissioner's sale of the lands in contro-
versy. Although they were parties to the proceedings
leading up to the commissioner's sale they have stood by
for nearly 15 years since the youngest became of age and
made no objection to the decree under which the sale was
made and acquiesced therein by participating in the dis-
tribution of the estate of their aunt, Amanda M. Stone,
which included the proceeds of the sale of 12 acres of the
16 acre tract in controversy. Moreover, appellants have
not made any offer to refund any part of the funds aris-
ing from the sale of the lands under the will of their aunt,
nor have they offered to restore to appellees the pur-
chase price which they were induced to pay on account
of the laches of appellants. Appellants rely upon the
general rule set out in 33 Am. Jur., Life Estates, Remain-
ders, etc., § 187, to the effect that laches, estoppel or
limitations will not run against a remainderman prior to
termination of the life tenancy, since the remainderman
has no right of possession until the life estate is termi-
nated. In a further treatment of the subject in § 189 of
the same work and volume the textwriter says: ''In con-
trast to this general view that laches cannot be invoked
against a remainderman for omitting to assert his rights
during the time that he was not entitled to possession,
the courts may refuse to exempt him from the require-
ment of equity that a suitor be diligent, and hold that he

is barred by the staleness of his claim, where the circumstances make it inequitable to permit the claim to be enforced. A defrauded remainderman cannot, merely because the precedent estate has not fallen in, lie by for a long period of time and then file a bill to rescind his conveyance on account of the fraud.'' In a discussion of the general rule that the owner of real estate by his acts or conduct may estop himself from asserting title thereto, it is said in § 191 of the same work: ''This rule applies to owners of an estate in remainder, and the owner of such estate, by consenting to a sale of the fee by the life tenant or by inducing such sale, thereby estops himself, as against a purchaser acting in good faith and without knowledge of the remainderman's title, to assert his title in remainder. And this is especially true where he has received a part of the purchase money.''

In *Horn* v. *Hull*, 169 Ark. 463, 275 S. W. 905, this court said: ''The doctrine of laches which is a species of estoppel rests upon the principle that, if one maintains silence when in conscience he ought to speak, equity will bar him from speaking when in conscience he ought to remain silent. *Gibson* v. *Herriott*, 55 Ark. 85, 17 S. W. 589, 29 Am. St. Rep. 17; *Jackson* v. *Becktold Printing & Book Mfg. Co.*, 86 Ark. 591, 112 S. W. 161, 20 L. R. A., N. S. 454; *Davis* v. *Harrell*, 101 Ark. 230, 142 S. W. 156; *Brownfield* v. *Bookout*, 147 Ark. 555, 288 S. W. 51; and *Stewart Oil Co.* v. *Bryant*, 153 Ark. 432, 243 S. W. 311.'' See, also, *Neal* v. *Stuckey*, 202 Ark. 1119, 155 S. W. 2d 683; *Pearl City Packet Company* v. *Thompson*, 201 Ark. 1043, 143 S. W. 2d 14; *Falls* v. *Jackson*, 208 Ark. 435, 186 S. W. 2d 787.

Under the facts and circumstances presented in this record we hold that it would be inequitable to permit appellants to challenge the validity of the sale held under the 1926 decree, and that they should be estopped from asserting their claim of title to the lands in controversy. It follows that the Chancellor correctly dismissed the complaint of appellants, and the decree is accordingly affirmed.