KNIGHT *v.* KNIGHT.

5-90                                                258 S. W. 2d 41

Opinion delivered May 18, 1953.

Rehearing denied June 15, 1953.

*Bailey & Warren,* for appellant.

*Guy B. Reeves, Mehaffy, Smith & Williams* and *R. Ben Allen,* for appellee.

GEORGE ROSE SMITH, J.   This is a suit by the appellee, L. H. Knight, to obtain an annulment of his marriage to the appellant, Bernice Knight.  By cross-complaint

Mrs. Knight sought a divorce. The chancellor found that Mrs. Knight's divorce from a former husband was void for the reason that she had not been a resident of Arkansas for three months prior to the rendition of that decree on March 16, 1942. Upon this finding the chancellor annulled the marriage and of course found it unnecessary to consider the defendant's cross-complaint.

The pivotal point in the case is whether Mrs. Knight, who was then Mrs. Kimball, became a resident of Arkansas on or before December 16, 1941. In the divorce decree the court expressly stated that Mrs. Kimball had been a resident of Crittenden County, Arkansas, for more than three months preceding the entry of the decree. The appellee concedes that when a judgment is attacked collaterally for want of jurisdiction every presumption must be indulged in favor of the validity of the judgment. *Hardy* v. *Hilton,* 211 Ark. 991, 204 S. W. 2d 163. There is also a strong presumption that the marriage between Mr. and Mrs. Knight is valid. Thus the appellee labors under a heavy burden of proof in his effort to obtain an annulment. We are decidedly of the opinion that the evidence falls far short of the high degree of cogency that is required in a case of this kind.

Knight, a contractor, and Mrs. Kimball met in Louisiana at a time when both were separated from their spouses. The friendship between the two continued after Knight went to Panama on a contracting job. It was decided that the couple would be married as soon as they could obtain divorces. According to Mrs. Knight, Knight suggested in a letter that she go to West Memphis, Arkansas, and consult an attorney of Knight's selection for the procurement of a divorce from Kimball. We think it beyond question that Mrs. Kimball came to Arkansas in December of 1941. She fixes the date as about the middle of the month. She testified that she remained in West Memphis until three or four days before Christmas, when she went to Houston, Texas, to meet Knight, who was flying back from Panama. After meeting Knight, Mrs. Kimball spent the Christmas holidays with her parents in Lufkin, Texas. It is undisputed that on

New Year's Day Knight and Mrs. Kimball left Texas and drove to West Memphis, where Knight also established his residence, it having been understood all along that the couple intended to live in Arkansas. It is not contended that Mrs. Kimball's Arkansas residence, if already established, would be interrupted by her Christmas visit to her parents.

Mrs. Kimball was awarded a divorce on March 16, but Knight's case was delayed, and Mrs. Kimball returned to Lufkin to await Knight's release from his marriage. That decree was entered on August 29, 1942, and, Mrs. Kimball having returned to Arkansas, the two were married on the same day and have lived in this State ever since. At the time of their separation on December 18, 1951, they were occupying a relatively expensive home which they had built near Little Rock. It is undisputed that they considered themselves lawfully married for more than nine years, and according to Knight's complaint it was not until after their separation that he discovered that there was any question about the validity of Mrs. Knight's divorce.

Mrs. Knight's own testimony amply supports her belief that she was a resident of Arkansas for at least three months before March 16, 1942. Her decree recited that the court considered the depositions of Mrs. Kimball, her two daughters, and Mrs. Noah Phillips. Each daughter had testified that Mrs. Kimball came to Arkansas in December. Mrs. Phillips' testimony was that she operated a rooming house in West Memphis and that Mrs. Kimball had resided there since December 14, 1941. Thus the evidence given by those who had reason to know the facts was materially in excess of the minimum required in a divorce case.

It is important to remember that Knight himself was a resident of West Memphis for the last two and a half months of the period in question. He was paying Mrs. Kimball's expenses, they were represented by the same attorney, and it cannot be doubted that each was intensely interested in the other's case. They knew that

they could not be married until Knight was granted a divorce. We are unable to think of any plausible reason for Mrs. Kimball, in these circumstances, to misrepresent the facts to her own attorney, to Knight, and to the court. It is significant that Knight chose not to take the witness stand in the present case.

The testimony attacking the duration of Mrs. Kimball's residence in West Memphis is by no means conclusive. An employee of a chain store testified that Mrs. Kimball had worked as an extra sales person in Lufkin in December and March, but since the company's records did not show the exact days of her work this evidence does not necessarily contradict the appellant's testimony. Another witness remembered that Mrs. Kimball was in Texas between the attack on Pearl Harbor and Christmas, but he was unable to specify the date of her visit.

One witness only, W. C. Allen, testified positively that Mrs. Kimball was in Texas on either the 13th or 14th of December. Allen based his statement on the fact that he had returned from Panama (where he worked with Knight) on the Saturday after Pearl Harbor, and that he talked to Mrs. Kimball on the night of his arrival or the next day. This witness, however, was attempting to recall a casual encounter that had occurred ten years earlier, and if his recollection is faulty by as much as forty-eight hours his testimony fails to negative the jurisdiction of the Crittenden Chancery Court. We are not willing, on testimony so obviously susceptible to error, to condemn as adulterous a marital association that continued for almost a decade.

It is also contended that the divorce decree is void as a matter of law for the reason that Mrs. Phillips, the principal corroborating witness as to Mrs. Kimball's residence, gave her deposition on March 10, 1942, which was four days before the expiration of the plaintiff's three months in Arkansas. We do not regard this as a fatal defect. Substantial corroboration is all the statute requires; it is not necessary that the supporting witness keep the plaintiff in sight for three consecutive months. And even if it should be assumed that Mrs. Kimball left

the State on March 10, although there is no evidence to that effect, the question would still be whether she thereby abandoned her Arkansas citizenship. Such a suggestion is obviously rebutted by the fact that she has continued to live here for more than ten years.

The decree granting the annulment is reversed and the cause remanded for further proceedings.

McFADDIN, J., concurs.